CITY OF WESTPORT *ex rel.*, A. A. WHITING, Respondent, v. THOMAS H. MASTIN *et al.*, Appellant.

Kansas City Court of Appeals, May 20, 1895.

1. **Municipal Corporations**: FOURTH CLASS CITIES: TAX LEVY: ORDINANCE: 'RESOLUTION. Where a charter directs the power of issuing special tax bills to be exercised by ordinance, a resolution does not meet the requirement.

2. ———: ———: LEVY OF SPECIAL TAX: DEFINITIONS. By the word levy as used in section 1592, Revised Statutes, 1889, is meant to charge upon the person or the property which must respond to the tax a sum of money already ascertained, and an ordinance specifying that certain street improvement should be paid for by special tax bills is not such levy.

3. ———: ———: ———: DELEGATION. The levy for special taxes in cities of the fourth class must be made by the legislative department and can not be delegated in whole or in part.

4. ———: ———: ———: CONTRACT. An ordinance ordering work, a contract for the performance of the work and the apportionment of the cost by the city engineer are all matter preceding the levy and upon which a levy is based but are not collectively or separately a levy.

5. ———: ———: ———: PERSON. Under the charter of fourth class cities, the levy for a special tax must be made on the owner or occupier of the property.

6. ———: STATUTORY CONSTRUCTION. Equitable constructions are never given to arbitrary regulations of public policy, and, if plain and unambiguous, there is no room for construction.

*Appeal from the Jackson Circuit Court.*—HON. J. H. SLOVER, Judge.

REVERSED.

STATEMENT BY ELLISON, J.

The following is the section of the statutes construed in the opinion:

"Section 1592. The board of aldermen shall have power, by ordinance, to levy and collect a special tax

on the owner or occupier of the property, lot or lots, on any street, avenue, alley, gutter and sidewalk, within such city, for the purpose of grading, macadamizing, building, guttering, curbing and repairing streets, alleys, avenues and sidewalks, in front of or along the same; and when such work shall by the board of aldermen be ordered to be done, the same shall be done in the manner and with the materials to be designated in such ordinance, at the owner's or occupier's expense, and collected by special tax bills, which shall be a lien on the property and shall be collected as provided by ordinance, and all special tax bills issued as herein provided for special assessments for paving, macadamizing, curbing, guttering, grading, excavating, building and repairing streets, alleys, avenues and sidewalks, as well as sewers, shall be assignable, and an action may be brought in the name of the city to the use of the holder thereof, in any court having jurisdiction of suits for the collection of city delinquent taxes, and such suits shall be governed by the same rules and like proceedings had on judgments as hereinafter provided for the enforcement and collection of city delinquent taxes by suits in court; but the city shall not in any event be liable for any costs that may accrue in such action; such special tax bills shall, in any action thereon, be *prima facie* evidence of the regularity of the proceedings for such special assessments, of the validity of the bill, of the doing of the work and of the furnishing the materials charged for, and of the liability of the property to the charge stated in the bill. When any work shall be completed under authority of this article, the city engineer or other officer having in charge the work shall compute the cost thereof, and apportion the same among the several lots or parcels of land to be charged therewith, and charge each lot or parcel of property with its proper share of such costs, according to the frontage of

the property. The city engineer, or the officer for the time being discharging the duties of that office, shall, after so apportioning and charging the cost of any work, make out and certify special tax bill or bills, according to such apportionment, and charge in favor of the contractor to be paid, against the several parcels of land charged, and in any suit or proceeding to enforce the collection of such special tax bill or bills, it shall only be necessary for the owner thereof to charge in the petition, that such an amount is due by the defendant to the plaintiff for a certain improvement, specifying the same, made by virtue of certain ordinances, giving their title and dates of adoption only, and the said tax bill or bills shall bear interest at the rate of ten per cent. per annum, after thirty days from the time the same is issued, and, if not paid in six months after the date of issuance, then at the rate of fifteen per cent. per annum until paid, and in case the owner is a nonresident, suit may be brought as in other suits *in rem* against nonresidents. Such tax bills may be paid in three annual installments, one third in one year, one third in two years and one third in three years, from the issue thereof, each payment to bear not exceeding ten per cent. interest per annum from date of issue to date of payment; *provided*, that the owner of any lot or parcel of ground fronting on such street, avenue, square, gutter, curb, alley, sidewalk, or part thereof, to be improved, shall, within ten days after the letting of the contract for such work, notify the city clerk in writing that he desires to pay for the same in three annual payments. In such cases, the city clerk or other proper officer shall make out three special tax bills which shall be signed by the mayor and attested by the city clerk, each for one third part of the cost of such work, bearing interest as aforesaid, which rate shall be fixed by ordinance, and deliver the same to the

contractor for the work; each and every such tax bill shall be a lien on such lot or parcel of ground therein described, and such lien shall continue for one year from maturity of the tax bill last becoming due until paid, or until the final determination of any legal proceedings to collect the same; but no such suit shall be brought on same until after maturity of all such tax bills. And tax bills issued under this article shall be registered by the clerk in his office, and by him delivered to the parties in whose favor issued for collection, and he shall take the receipt of such party therefor in full for all claims against the city on account of said work; each tax bill shall contain a description of the lots or parcels of land against which is issued, full and correct enough to identify the same. The board of aldermen shall have power by ordinance, to vacate any alley, road, street or avenue, or any part thereof, within the city limits: *Provided*, that notice of the intended change or vacation of such street, alley, road or avenue be given by publication for four weeks successively, before the passage of such ordinance, and when a notice shall be required to be published in a newspaper in such city, and no newspaper is published therein, then a notice published in a newspaper nearest such city shall be a sufficient publication of such notice."

*T. A. Frank Jones, Jno. C. Gage, Hugh C. Ward* and *Wash Adams* for appellant.

(1)   The statute requires a levy by ordinance on the owner or occupier. R. S. 1889, sec. 1592.   (2) This provision prescribes a mode which must be strictly construed and complied with. Cooley on Taxation [1 Ed.], pp. 209-464; 2 Dillon on Municipal Corporations [3 Ed.], sec. 769; *Kansas v. Swope*, 79 Mo. 448; *Galbreath v. Newton*, 30 Mo. App. 393; *Crane v.*

*French*, 50 Mo. App. 372; *Leach v. Cargill*, 60 Mo. 316; *Nevada v. Eddy*, 27 S. W. Rep. 474. (3) The word levy, as employed in this statute, means the legislative act which determines the amount of the tax and assesses or imposes it. *Kansas v. Railroad*, 81 Mo. 293. (4) A levy is essential because: *First*. The tax must be imposed by levy. *City of Mexico v. Cauthorn*, 25 Mo. App. 292. *Second*. Because the statute expressly requires it. (5) The tax bill in suit is void because the board of aldermen did not levy the special tax by ordinance. A resolution is insufficient. *Trenton v. Coyle*, 107 Mo. 196; Beach on Public Corp., sec. 1179. (6) It is void because the board of aldermen did not levy the special tax by ordinance on the owner or occupier. *Sedalia a. Gallie*, 49 Mo. App. 392; *Abbott v. Lindenbower*, 42 Mo. 167; *State ex rel. v. Catron*, 118 Mo. 280; *Whitney v. Thomas*, 23 N. Y. 285; *Felthousen v. Amsterdam*, 69 Hun, 505; *Himonelman v. Steiner*, 38 Cal. 175; *Sharp v. Speer*, 4 Hill, 76. (7) The ordinance passed before the contract was let, directing payment in tax bills, does not constitute a levy. (8) Tax bills can not properly be issued till the work is done. *City to use v. Clemens*, 49 Mo. 552; *Galbreath v. Newton*, 45 Mo. App. 312; *Implement Co. v. Bellview*, 58 N. W. Rep. 446. (9) The duty of ascertaining and levying on the owner or occupier, imposed by the statute on the board of aldermen, can not be delegated. *Ruggles v. Collier*, 43 Mo. 353; *Thompson v. Boonville*, 61 Mo. 282.

*Beardsley, Gregory & Flannelly* for respondent.

(1) Ordinance 160, together with the ordinance confirming the contract, is to be considered in connection with the provisions of section 1592, Revised Statutes, 1889, and the two other ordinances already in

force, the one establishing the grade along the line of street to be improved, and the other providing for the width of sidewalk grade. The levying of the tax is thus completely made by ordinance, and what remained to be done was merely clerical; and was properly done, in accordance with statutory provisions, by the city engineer. *Sheehan v. Gleeson*, 46 Mo. 102; *Moran v. Lindell*, 52 Mo. 229; *Carlin v. Cavender*, 56 Mo. 288; *Galbreath v. Newton*, 30 Mo. App. 392; *Adkins v. Railway*, 36 Mo. App. 661; *Becker v. Washington*, 94 Mo. 375. (2) In the most strict sense of the term, no set form of words is necessary to constitute a levy. It is sufficient that the body charged with the duty has declared its will that the work shall be done, and in such manner that when the work is completed, the estimation of the total cost and the proportion to be charged against each parcel of land are definitely provided for. *State ex rel. v. Railway*, 101 Mo. 149; *Green v. Springfield*, 130 Ill. 515; *Tillman v. Cook*, 43 Iowa, 330. (3) But the word has no such meaning as is contended for. As used in our statutes and decisions, it means "to raise." This is its legal and scientific meaning. *Valle v. Fargo*, 1 Mo. App. 344. (4) It is conceded that all steps up to the time of and including the approval of the contract for the work were complete and in due form of law, and that the contractor fully completed his work, according to contract. The law will not permit him or his assignee to suffer because of any informality, if any such there were, subsequent to the time when he thus became entitled under his contract to valid tax bills. 2 Dillon on Municipal Corporations [3 Ed.] sec. 812; *Johnson v. Duer*, 115 Mo. 378; *Wilson v. Salem*, 24 Oregon, 504, 34 Pac. Rep. 12; *Flewellin v. Hoetzel*, 15 S. W. Rep. 1043; 80 Tex. 191; *State ex rel. v. Railroad*, 113 Mo. 308; *State ex rel. v. Railroad*, 116 Mo. 25.

ELLISON, J.—This action is based on a tax bill issued for the improvement of certain property, in the grading for sidewalks on streets in the city of Westport. The judgment below was for plaintiff and sustained the validity of the bill. Defendant attacks the validity of the bill on the ground that, under the charter of the city of Westport, a tax bill can not be enforced until a special tax has been levied by the board of aldermen, by ordinance duly enacted, and that, in this case, no levy was made. The proceedings of the city authorities of the city of Westport, prior to the issuing of the tax bill in suit, were these: *First.* An ordinance was passed, requiring the grading to be done for sidewalks on South Main street in said city, prescribing how it should be done and when it should be completed, and that the work should "be paid for in special tax bills against, and upon, the lands that may be charged with the cost thereof, according to law, which work the board of aldermen deems necessary to have done." *Second.* A written contract for the grading, in due form, was made by the city engineer, on behalf of the city, with Wheeler & Elmore, contractors. *Third.* The approval of this contract by ordinance passed by the board of aldermen. *Fourth.* The city engineer reported to the board of aldermen, in session, the completion of the work; whereupon, the board, by a resolution, ordered the tax bills to be issued. *Fifth.* An apportionment by the city engineer of the whole cost of the work among the several lots and parcels of land to be charged therewith, charging each lot with its proper share of the whole cost. And then tax bills, including the one in suit, were made out, in due form, and the one in suit assigned by the contractors to this plaintiff.

It will be noticed that there were two ordinances and one resolution by the board of aldermen. The first ordinance provided for grading the sidewalks, and

recited that the work was to be paid for in tax bills. The second ordinance merely approved of the contract as let to the contractors by the city engineer. The resolutions passed after the work was completed, directed the issuing of the tax bills.

The authority upon which the whole proceeding is based is found in section 1592, Revised Statutes, 1889, of the charter of cities of the fourth class, to which class the city of Westport belongs. That section will be found set out in full at another place. It provides, among other things: "The board of aldermen shall have power, by ordinance, to levy and collect a special tax on the owner or occupier of the property, lot or lots, on any street," for the purpose of grading in front of such property. That the work shall be done, "at the owner or occupier's expense, and collected by special tax bills, which shall be a lien on the property, and shall be collected as provided by ordinance." This charter limits the power of the board of aldermen and prescribes the mode of its exercise. It is at this point that the difference between the parties to this controversy appears. It is practically conceded that the special tax must be levied by the board of aldermen by ordinance, and the question made is, has it been so levied within the meaning of the charter. A charter granting such power to the governing board of a municipality, being the only warrant whereby such board exerts such authority, must be strictly construed; and the *mode* of its exercise must, when prescribed by the charter, be strictly followed in all essential or substantial particulars. 2 Dillon on Municipal Corporations, sec. 769; *Nevada v. Eddy*, 123 Mo. 546; *Kiley v. Oppenheimer*, 55 Mo. 374. In the case last cited it was said: "The ability of the city to create a lien on the property of one of its citizens, in the manner pointed out in the ordinance referred to, is founded not in any abso-

lute or pre-existent right, but rests exclusively in an adherence to the method prescribed by ordinance, in pursuance of the authority contained in the charter."

That the board of aldermen did, in this case, attempt to exercise the power of special taxation, granted by the foregoing charter, is undoubted; but we are satisfied they have not exercised it in the mode, or under the conditions prescribed for its exercise. And, in passing on what has been done by the city authorities of Westport, we can attach no consequence to the resolution of the board ordering the engineer to issue the tax bills, since the charter directs the power to be exercised by ordinance, and a resolution, as is well understood, does not meet such requirement; a resolution lacking essential elements necessary to the validity of an ordinance. *Town of Trenton v. Coyle*, 107 Mo. 193.

The charter, above quoted, grants the power to impose a special tax by a levy which is to be made by ordinance. Conceding, as is contended by plaintiff, that no special words are necessary to be used by the municipal legislature in order to constitute a levy, within the meaning of the word as used in the charter, yet it is manifest that, by the word *levy*, as here used, is meant, to charge upon the person or the property which must respond to the tax, the amount thereof. And, when the word is used as here, it means to charge a sum of money, already ascertained, against the person or property subject to the charge. The charter specifies that the tax is to be collected in proportion to the number of front feet the property may contain, and authorizes the levy of a special tax in certain amounts, which amounts are to be ascertained in a prescribed mode. It, of necessity, follows that a levy *of such character* must be made by ordinance, *after* the amount for which the levy is to be made has been ascertained. Other-

wise, it is a blind levy of an unascertained sum. This being true, it is idle to assert that the ordinance passed before the work was done, authorizing it to be done, was a levy of the special tax. That ordinance, it is true, specifies that the work was to be paid for b yspecial tax bills, issued against the property to be charged. But that is no more than the charter itself specifies. The ordinance could not have said otherwise, if it mentioned the mode of payment at all. It would have been equally as effective without that clause. That clause inserted in the ordinance was no more a levy of the special tax in the manner, form and amount required, than do those words, as they stand in the charter, constitute a levy.

But it would appear from arguments in behalf of plaintiff, that the work of the city engineer in apportioning the cost of the work, connected with an ordinance authorizing the work, was, in effect, a levy. We think not. The levy must be made by the legislative department of the city government, composed of the alderman and mayor. It can not be delegated in whole, or in part, to the city engineer. The ordinance ordering the work, a contract for the performance of the work, and the apportionment of the cost by the city engineer, are all matter preceding the levy and upon which a levy is based, but they are not, collectively, or separately, a levy. The engineer's share in the proceeding is necessary to the levy, but no more so than the contractor's, and neither constitutes the levy. A levy, in the sense used in this charter, which, as before stated, contemplates a charge of certain amounts on certain properties of certain locations; *after certain prerequisites have been performed,* belongs to the legislature of the municipality. A call for such levy might be made under conditions and circumstances, when, in justice, it should not be ordained. Such a levy

may frequently call for legislative discretion, as distinguished from ministerial acts, and largely differing therefrom.    It is of such a nature that it can not be delegated in advance to the act and conduct of others.

The foregoing, under the peculiar provisions of the charter aforesaid, is not the only reason why the tax bill in suit should be declared to be invalid.    The charter not only provides that the board of aldermen shall make the levy by ordinance, but the levy must be made "on the owner or occupier of the property, lot or lots."    The proceedings of the board of aldermen utterly fail to show a levy against, or on, any individual owner or occupier of the property sought to be charged. · Considering that this is a proceeding whereby the owner is to be divested of his property, *nolens volens*, the justice in at least giving ear to his demand that the mode of divestiture shall be complied with, is apparent.    In *Abbot v. Lindenbower*, the following is quoted with approval from DILLON, J., in *Allen v. Armstrong*, 16 Iowa, 508, viz.: "We state the principles, which must be legally and logically true, in this wise: If any given step or matter in the exercise of the power to tax (as, for example, the fact of the levy by the proper authority), is so indispensable, that without its performance no tax can be raised, then that step or matter, whatever it may be, can not be dispensed with, and with respect to that, the owner can not be excluded from showing the truth by a mere legislative declaration to that effect."    This principle was stated by this court in *City of Sedalia v. Gallie*, 49 Mo. App. 392.    But since the tax is not a personal claim and must be realized out of the property charged, it may be suggested that it is of no practical importance for the levying power to specify the owner or occupier of the property.    But the question of its practical import-

ance is not for judicial determination. Such question belongs to the lawmaking power. In the case last cited this court, through GILL, J., said: "It matters not that personal judgment can not be had against the owner for these local assessments; the statute must be obeyed. If it is provided thereby that in making such assessments it shall be charged against one as the owner of the land, then no lien is created, unless such provision is followed."

We have but to give application to the expression of the legislative will and should not attempt to construe, where such construction is in the face of the clear statement of the will of the legislature. "Equitable constructions are never given to mere arbitrary regulations of public policy." Sedgwick's Constr. Stat., 251. "The rule is, as we shall constantly see, cardinal and universal, that, if the statute is plain and unambiguous, there is no room for construction or interpretation. The legislature has spoken; their intention is free from doubt, and their will must be obeyed." *Ib.*, 194. The supreme court of the United States said in *Fisher v. Blight*, 2 Cranch, 358, 399: "Where a law is plain and unambiguous, whether it be expressed in general or limited terms, the legislature should be intended to mean what they have plainly expressed, and, consequently, no room is left for construction." Endlich on Interpretation of Statutes, section 4, expresses in clear terms, and apt quotations from Vattel, the same views as to the province of the courts in the application of statutes. From these considerations also, we are constrained to hold the tax bill to be invalid. The judgment, therefore, must be reversed. All concur.