THE STATE *ex rel.* HAHN *et al.*, *Appellants*, v. WESTPORT *et al.*

In Banc, June 23, 1896.

1. **Mandamus**: TAX BILLS: COLLUSIVE SUIT. Where *mandamus* proceedings, to compel the issuance by a city of new tax bills in place of ones previously issued for a public improvement, are brought merely because all the parties desire to obtain the ruling of the supreme court as to the validity of the old tax bills and not on account of any real controversy over the refusal to issue the new ones, the proceedings are properly dismissed.

2. ——: ——: ——. Courts will not determine collusive suits.

*Appeal from the Jackson Circuit Court.*

AFFIRMED.

*Moore & Vaughan* and *C. O. Tichenor* for appellants.

(1) The tax bills in controversy, held by August Hahn, are void if the case of the *City of Westport ex rel. v. Mastin*, 62 Mo. App. 647, correctly states the law. If they are void, of course the city should be compelled to issue new ones, in accordance with law. If they are not void, of course the city has done its duty and the judgment should be affirmed. The relators would prefer having the old tax bills held valid, because if new ones are issued it may involve a loss of

interest.. (2) The question raised by this proceeding is one purely between the city and contractor. It is not upon a collateral matter. The contractor has fulfilled his contract; the work has been received; it is the duty of the city to fulfill its part of the contract, to wit, to give the contractor the tax bills. It is his pay for the city pays nothing. It is a strange position for a city to take, to refuse, without reason, to do as it agreed by a written contract, if the old tax bills are void. We will not say that it is dishonest. The contractor is entitled to a speedy remedy; it may be his only one. See 2 Spelling, Extraordinary Relief, secs. 1531, 1534; *State ex rel. v. Philips*, 97 Mo. 341; *State ex rel. v. Walbridge*, 123 Mo. 539. (3) No exception was taken to the joinder as parties of Fielding the contractor and Hahn the assignee.

*A. S. Marley* and *Pratt, Ferry & Hagerman* for respondents, city of Westport, R. J. Ingraham, mayor, and D. D. Drake, alderman.

(1) This is certainly a suit collusively instituted and should be dismissed. *Lord v. Veasey*, 8 How. 251; *Doe v. Collins*, 11 Ind. 24; *Gaines v. Hennen*, 24 How. 628; *Cleveland v. Chamberlain*, 1 Black, 425; *Wood Paper Co. v. Heft*, 8 Wallace, 336; *Dakota Co. v. Glidden*, 113 U. S. 226; *People v. S. P. & T. Co.*, 149 U. S. 314; *Little v. Bowers*, 134 U. S. 557; *Spring Hill M. Co. v. Mining Co.*, 145 U. S. 301, 155 U. S. 295; *Hoskins v. Lord Berkley*, 4 Term, 402; *Fletcher v. Peck*, 6 Cranch, 147; *Mfg. Co. v. Wright*, 141 U. S. 696. (2) Everyone is conclusively presumed to know the law, and both Fielding and Hahn were chargeable with the knowledge that the tax bills were invalid, being improperly issued. *Cheeney v. Brookfield*, 60 Mo. 54; *Saxton v. St. Joseph*, 60 Mo. 160; *Keating v.*

*Kansas City*, 84 Mo. 419; *Carroll v. St. Louis*, 4 Mo. App. 194; *Verdin v. St. Louis*, 33 S. W. Rep. 497. (3) One dealing with a city through its officers, is charged with the notice of their powers. *Keating v. Kansas City*, 84 Mo. 415; *Lester v. Baltimore*, 29 Md. 415; *Couch v. Kansas City*, 127 Mo. 439; *Cheeney v. Brookfield*, 60 Mo. 54; *Verdin v. St. Louis*, 33 S. W. Rep. 497. (4) Fielding, with a full knowledge of the facts and in ignorance of law, accepted from the city tax bills he was bound to know were void, in the discharge of its obligations to him. The city is discharged from all liability on its contract. *Hayden v. Johnson*, 26 Vt. 768; *Keating v. Kansas City*, 84 Mo. 415; *Brown v. Feeter*, 7 Wend. 301; *Carroll v. St. Louis*, 4 Mo. App. 191; *Couch v. Kansas City*, 127 Mo. 438; *Ralston v. Wood*, 58 Am. Dec. 608; *Flower v. Elwood*, 66 Ill. 444; *Smith v. Hobleman*, 12 Neb. 502; *Smith v. Whitfield*, 67 Tex. 124. (5) It is admitted that Fielding has received payment for the void tax bills and has parted with all his interests therein. Therefore Fielding, having no interest in the suit, can not maintain the action on his part. *Ins. Co. v. Lanier*, 58 Am. Dec. 448; *Dix v. Ins. Co.*, 22 Ill. 272; *Shoemaker v. Grant*, 36 Ind. 175; *Buffington v. Land Co.*, 25 Mo. App. ·492; R. S. 1889, sec. 1990. (6) The tax bills were purchased from Fielding by Hahn by reason of his ignorance of law, and Hahn is without relief against Fielding. *Couch v. Kansas City*, 127 Mo. 438; *Campbell v. Clark*, 44 Mo. App. 249; *Savings Inst. v. Enslin*, 46 Mo. 200; *Wolf v. Marshall*, 52 Mo. 167; *Savings Ass'n v. Kehler*, 7 Mo. App. 158; *Schell City v. Mfg. Co.*, 39 Mo. App. 265. (7) The same rule applies when he acts in ignorance of facts which he has the means of knowing. *Wolf v. Marshall*, 52 Mo. 167; *Savings Ass'n v. Kehler*, 7 Mo. App. 165. (8) Hahn, having no rights against Fielding, Hahn has no rights against Westport

for three reasons: *First.* Fielding has no rights against Westport. *Second.* If he had, there can be nò claim to subrogation to Fielding's rights against Westport under the contract, for the reason that Hahn's purchase from Fielding was voluntary. *Woolridge v. Scott*, 69 Mo. 690; *Evans v. Halleck*, 83 Mo. 376; *Norton v. Highleyman*, 88 Mo. 621; *Wade v. Beldmeier*, 40 Mo. 486; *Kleimann v. Gieselmann*, 114 Mo. 437. *Third.* The doctrine of subrogation is a doctrine of the court of chancery, and can not be enforced in this action. High, Extr. Legal Remedies, sec. 9; *Allen v. Wood*, 3 Ired. Eq. (N. C.) 386; *Clark v. Bank*, 57 Mo. App. 283.

*Scarritt, Griffith & Jones* and *F. W. Griffin* for all respondent aldermen except D. D. Drake.

ROBINSON, J.—This is a proceeding by *mandamus* instituted at the relation of August Hahn and John C. Fielding and directed against the city, the mayor, board of aldermen, and engineer of the city of Westport as defendants, to compel the issuance of certain tax bills against certain tracts of land in said city for the amount chargeable against them to pay for the grading of Thirty-ninth and McGee streets in said city.

The work of grading the streets was completed in 1893, and tax bills were then issued and delivered to the contractor Fielding, one of the relators herein, to pay the price of the work which amounted to something over $9,000, which at the time of their issuance were sold and assigned by Fielding to his co-relator Hahn. All the bills thus issued, except those described in the alternative writ, amounting to $2,579.08, have been paid.

The alternative writ, after reciting all the ordinances of the city authorizing the doing of the work in

question and the contents of the tax bill heretofore issued to pay therefor, declares the ordinance as passed by the city to be insufficient to warrant the issuance of the tax bills above named, and closed with this command to the defendant:

"By ordinance levy and collect special taxes on the owner or occupier of all lots or tracts of land described in each of the tax bills hereinbefore enumerated and described, to which said tax bills and the record thereof reference is had for a description of such lands, for the purpose of paying the cost of the grading aforesaid, or that part of such cost which is under the law chargeable against the said lots or tracts of land, and that you issue and deliver to the petitioners valid special tax bills in lieu of the bills hereinbefore enumerated and described, or that you show cause to this court at its session in the city of Independence, at 9:30 A. M., on the ninth day of September, 1895, why you have not done so."

During the progress of the proceedings and before the issues were finally made up, upon which the court acted, the *personnel* of several of the defendant office holders changed, by resignation and otherwise, and we give the following as a history of the different pleadings filed by the different defendants and the different dates thereof:

September 13, 1895, F. W. Griffin, as attorney for the city of Westport and also as attorney for aldermen Tobin and Merriwether filed demurrers to the alternative writ. And on the same day aldermen McMillan, Banta, Knepp, Wheeler, and Balcolm and engineer Robertson filed by their attorney a like demurrer.

September 17, 1895, R. J. Ingraham, as city attorney, filed a written withdrawal of demurrer filed by F. W. Griffin for the city. On the same day Slavens as mayor on his own behalf and on behalf of D. D. Drake

as alderman filed a motion to dismiss the case on the ground that the writ was collusive and fraudulent, and on same day B. F. Jones *amicus curiae*, filed suggestion that the suit was collusive and fraudulent.

October 18, 1895, the city of Westport, R. J. Ingraham, mayor, and D. D. Drake, as alderman, by their attorney, filed their joint return, admitting most of the facts, but claiming as independent defenses: "*First.* That since the issuance of the alternative writ J. W. Slavens as mayor and F. T. Robertson as engineer, original defendants, had resigned their offices, and R. J. Ingraham had been appointed mayor, and H. B. Abercrombie city engineer. *Second.* No good faith demand was ever made for new tax bills, but any demand made was pursuant to a fraudulent scheme to have instituted a collusive suit of the character hereinafter described. *Third.* This is a collusive and fraudulent suit in which no adverse interests are at stake, and in which the interests of the parties are identical, certain of the defendants conspiring with relators to impose upon the court a pretended controversy for the sole purpose of obtaining a decision as to the validity of certain tax bills against third persons who are not parties to the action. The active conspirators in the fraudulent scheme are defendants, aldermen McMillan, Banta, and Tobin. *Fourth.* The alternative writ joins two separate and distinct pieces of work, and there is therefore an improper joinder."

On the same day, October 18, defendants McMillan, Banta, Knepp, Wheeler, and Balcolm, and Robertson, the former engineer of the city, by their attorney, filed what they call their separate return to the alternative writ, admitting the fact stated in such writ to be true, but denying the conclusion of law set out in the writ (a demurrer in effect), and then proceeding with a denial of the allegations of fraud and conspiracy

charged to them by the suggestion filed by B. F. Jones as a friend of the court, and the like charges made against themselves in the return of the city of Westport, Ingraham, as mayor, and Drake, alderman. Upon the demurrer filed by aldermen Tobin and Merriwether no action was ever taken and no return was ever made.

On the above pleadings, the court proceeded to hear the testimony as offered by all parties pleading on the different issues as raised by each, and at the conclusion thereof entered its judgment dismissing plaintiff's writ, and the entire proceedings, and for its refusal to set aside its finding and judgment, and award to the relators a new hearing, they have prosecuted their appeal to this court.

Just what was the moving consideration with the court, which resulted in its denial of the writ and dismissal of the proceedings, can not be accurately determined from declarations of law given on the different issues of facts raised, as defendants asked none, and all the declarations of law, as well as the instructions in the nature of finding of facts, tendered by relators, were refused. But in their tender and refusal two pertinent facts in this inquiry are made quite manifest:

*First*, by what relators term their refused instruction numbered 2, which reads as follows: "2. The court declares that there is no evidence of any fraud, either on the part of relators, or on the part of any of the respondents," we know that the trial judge, who had all the parties before him, heard the testimony and witnessed their demeanor while upon the stand, discovered some evidence of fraud on part of the relators and a part of the defendants, in the manner of getting up this as a fictitious suit, in order to get a ruling from this court upon a question that was not a real substan-

tial controversy between those who appeared as adverse parties to the litigation on the face of the papers.

*Second,* by a reading of relators' refused instructions 4 and 5, as follows: "4. Unless the tax bills sought to be compelled to be issued will be valid, then this writ must be denied." "5. The tax bills sought to be compelled to be issued will be valid," it is equally as apparent that relators' real effort was more to secure a ruling of the court, as to the validity or invalidity of the tax bills heretofore issued than they were to secure absolutely the issuance to them of new tax bills.

While the reasons that led the trial court to the judgment entered herein are not as clear as if declarations of law had been given upon all the issues of fact raised by the pleadings and testimony, still the reasons are overwhelming from an examination of the fact, as disclosed by the record, why the trial court should be sustained in its judgment denying its final writ and dismissing the proceedings.

Without going into the details of the testimony, we feel justified in announcing that upon almost every page of the record facts are disclosed that give unmistakable evidence of a mere colorable dispute between relators and defendants, and upon which relators and most of the defendants desire simply and only a ruling as to the validity of the tax bills heretofore issued to, and now held by, relators.

That this is not a good faith proceeding on the part of relators to have issued to them absolutely new tax bills in lieu of those heretofore issued by the city, and now held by relator Hahn (according to the command of the alternative writ), is conclusively shown, in fact, is absolutely confessed by the relator Hahn, from the witness stand, as appears by the following questions and answers thereto:

"*Q.* Mr. Hahn, did you sign the demand that was made for the new tax bills?   *A.* Did I sign it?

"*Q.* Yes, sir.   *A.* Sign what?

"*Q.* Did you sign the demand that was made for the new tax bills?   *A.* No, sir.

"*Q.* You never did?   *A.* No, sir.   For new tax bills?

"*Q.* Yes, sir.   *A.* No, sir.

"*Q.* The demand to the city council, I mean? *A.* To throw the old ones away?

"*Q.* Yes, sir.   *A.* No, sir.

"*Q.* Did you ever, at any time, want that done? *A.* I wanted it done if it could be done legally, but I understood that if there was new tax bills issued they would have a better way to fight them than the old ones; I did not want them if they were not legal.

"*Q.* Then do I understand you to say that you did not want the new tax bills to be issued?   *A.* No, sir, unless the supreme court decides they are legal; there is a scheme in it, and they would fight the new ones if they were issued just the same as they have the old ones; that is what I understand.

"*Q.* Well, when you presented your demand, or the demand that was presented in your name and the name of Mr. Fielding, did you sign the paper?   *A.* No, sir; I never signed it at all.

"*Q.* You never signed any demand?   *A.* No, sir.

"*Q.* Did you ever ask the city council of Westport for new tax bills?   *A.* No, sir.

"*Q.* You did not?   *A.* No, sir.

"*Q.* Well, did you ever know that the council was asked?   *A.* Well, I said one day that I wanted to know where we stood; that if they did not intend to pay the old tax bills, and we could not make them do it, I wanted to know it, so that I could tell where I stood; I said that if they would not pay the old ones, and

they could not be made to pay them, that I wanted new ones issued in such a way that there would not be any trouble about it, and I heard afterward that certain parties would fight the new tax bills after they were issued, and they could beat them easier than the old ones.

"*Q.* Well, did you ever ask the council for new tax bills? *A.* No, sir.

"*Q.* You never did? *A.* Never.

"*Q.* Are you willing to give up your old tax bills now and take new ones in their place? *A.* Yes, if the supreme court would decide that the new ones are good.

"*Q.* But if the supreme court did not decide it you are willing to hang on to the old ones? *A.* Well, I would like to hear the supreme court give a decision on the old tax bills and say they are good.

"*Q.* Then you will hang on to the old ones? *A.* Yes, sir; that is the way, until the supreme court decides it; the court here in Kansas City has decided it, and I want to hear what the supreme court has to say about it; the court here in Kansas City decided they were not good, and in that asphalt case the supreme court decided they were good, and I want to know which is right.

"*Q.* Well, answer my question, please; do you want new tax bills or do you want to hang on to your old ones? *A.* I want the supreme court to decide the case.

"*Q.* You want it decided in your favor? *A.* Of course.

"*Q.* Until the supreme court decides it, you will do nothing? *A.* No, sir.

"*Q.* And until that time you want to hang on to your old bills? *A.* If they will promise me they will be paid, so there will be no hereafter, then I will take

VOL. 135 mo—9

new ones, but if they don't promise that and they will fight the new ones, then I want the old ones until the supreme court decides it.

"*Q.* Well, it amounts to this—that the supreme court will have to decide this matter, one way or another, before you will give them up? *A.* Yes, if the council guarantees that the new ones are good, I will take them, but if not I will hold on to what I have got. I will let the supreme court decide it.

"*Q.* And until that time you will hang on to your old ones? *A.* Yes, sir."

In justice to relators it might perhaps be said that he afterward, on cross-examination by his attorney, stated that he did sign a demand to the city for the issuance of new tax bills, as appears from the following colloquy between himself and his attorney:

"*Q.* Mr. Hahn, that is your signature? *A.* That there?

"*Q.* Yes, sir. *A.* Yes, sir.

"*Q.* That is your signature to that paper? *A.* Yes, sir.

"*Q.* So, if that is the petition and that is your name as you say it is, you did sign that paper? *A.* Yes, sir; I did, but I did not know that there was anything in it about the new tax bills or not. If I did, I don't recollect it now. That is my name, though."

Still, when he admits that he did sign the petition shown to him by his attorney that was afterward proven to have been presented to the board of aldermen of Westport and refused, it is most manifest that it was not intended as a good faith demand for new tax bills in lieu of those held by him. Relator was willing to give up these that he now has and take the new ones that he was demanding, only on the condition, as he expresses it, that the supreme court would decide that the new to be issued would be valid, and

were better than those he then and now holds. In other words the demand was a sham made by Armstrong in relator's behalf, as was the refusal to issue new tax bills by the board of aldermen of Westport.

Several of the board of aldermen testify that they were requested by Armstrong to vote for the resolution refusing the request of the petition presented by himself on behalf of relators, for the new tax bills, and confess that they did so in order that the case might be taken to this court to secure a ruling as to the validity of the first tax bill issued by them, similar ones to which had been declared void by the court of appeals.

If, after the reading of the testimony of the board of aldermen who were called as witnesses, and of the relator Hahn, there had remained a possible doubt in the mind of the court as to the fictitious character of these proceedings, that doubt would have been removed, when we were called upon to read the following exceeding brief and modest suggestion filed by the able counsel representing relator in their effort to reverse a judgment hostile to their client's interest, if they or their clients desired what was commanded by the alternative writ issued herein, in the first instance on their application:

"The tax bills in controversy, held by August Hahn, are void if the case of the *City of Westport ex rel. v. Mastin*, 62 Mo. App. 647, correctly states the law. If they are void of course the city should be compelled to issue new ones in accordance with law. If they are not void of course the city has done its duty and the judgment should be affirmed. The relators would prefer having the old tax bills held valid, because if new ones are issued it may involve a loss of interest.

"Instead of being abused, it seems to relators that the aldermen are simply doing their duty when they refuse to issue new bills until the highest court of the

state tells them that it ought to be done; they can not be guilty of a fraud by obeying the mandate of this court.''

Would one think, from the above brief suggestions, to this court, by counsel for relator, that they in good faith demanded the issuance of a new tax bill in lieu of the old heretofore issued to their clients? On the contrary, counsel tell us in unqualified words ''The relator would prefer having the old tax bills held valid, because if new ones are issued it may involve a loss of interest.''    And could we infer, so far as any suggestion of relator's counsel might reach; that the board of aldermen of Westport had refused to do any duty that would call for a mandatory order from this court commanding its performance, counsel in their argument to us, say that ''the aldermen are simply doing their duty when they refuse to issue new bills,'' etc.

Then if aldermen were doing their duty when refusing to issue the new tax bills, and relator prefers to retain the old to having issued to them new bills, we see no call for the exercise of the judgment of this court, and will decline to review by this indirect and fictitious proceeding the action of the Kansas City court of appeals in the case of the *City of Westport ex rel. v. Mastin*, involving the validity of tax bills issued under similar circumstances and under like ordinances, to the tax bills now held by relators, or rather to decide by this indirect action whether or not the reasoning of that opinion is right or wrong, as is the manifest purpose of this proceeding.

The thing relators want is not new tax bills ordered issued to them, but this writ denied, and as a result of that denial, a declaration from this court in favor of the validity of the tax bill now held by them, adverse to the opinion of the Kansas City court of appeals in

the *Mastin* case on similar tax bills. The defendant aldermen, with probably one exception, desire the same thing. The real parties to this proceeding are not adverse, but friendly. Their apparent disagreement is feigned, not real, and this court for that reason, as was probably the reason for the trial court's action in denying the permanent writ, will sustain its judgment.

As we understand the law, this court as the trial court, would be wanting in authority to try and determine the issues as raised upon the writ and return made thereto, by the conspiring aldermen, or any and all parties appearing, whenever the fictitious character of the proceedings was made to appear to the court. The authority of this, as of every judicial tribunal, is limited to the consideration of rights which are actually controverted. Unless some individual right, directly affecting the parties litigant is thus brought in question, so that a judicial decision becomes necessary to settle the matter in controversy between those relative thereto, the courts have no jurisdiction; and it would be a perversion of the purposes for which they were instituted and an assumption of functions that do not belong to them, to undertake to settle abstract questions of law in whatever shape such question may be presented. *Brewington v. Lowe*, 1 Ind. 21, and cases there cited; *Smith v. Railroad*, 29 Ind. 546; *California v. Railroad*, 149 U. S. 308; 91 Cal. 545.

The legislature and not the judiciary promulgate laws for the future guidance of the people. Courts are called upon to construe the law and apply it to the particular facts in controversy in actual controverted cases before them. Sham proceedings and colorable disputes between parties actually friendly, to obtain the opinion of courts upon questions of law, for their own interests or for their future guidance, have ever

been condemned, and should never receive knowingly their approval.

In *Lord v. Veazie*, 8 How. 255, Chief Justice TANEY, in writing upon this question, uses this language: "It is the office of courts of justice to decide the rights of persons and property, when the persons interested can not adjust them by agreement between themselves—and to do this upon the full hearing of both parties. And any attempt, by a mere colorable dispute, to obtain the opinion of the court upon a question of law which a party desires to know for his own interest or his own purposes, when there is no real and substantial controversy between those who appear as adverse parties to the suit, is an abuse which courts of justice have always reprehended, and treated as a punishable contempt of court."

It so clearly appearing that this is no adversary proceeding, so far as relator and the majority of the board of aldermen of the city of Westport are concerned, who could and would have issued, in lieu of the old, new tax bills, had relators desired it, this court will refuse to discuss the issues raised by the pleadings except as above, and will affirm the judgment of the trial court, dismissing the proceedings and denying relator's writ. MACFARLANE, J., SHERWOOD, J., BURGESS, J., GANTT, J., concur. BARCLAY, J., concurs in result. BRACE, C. J., absent.