ATTORNEY GENERAL, *ex rel.* McRAE, *v.* THOMPSON.

1. EQUITY—INFORMATION—ATTORNEY GENERAL — MUNICIPAL COR-
PORATIONS.

   While the attorney general may file informations to restrain
   municipal corporations from doing illegal acts or from
   exceeding their authority and corporate powers, an informa-
   tion filed on the relation of a taxpayer, which avers that the
   common council and board of estimates of the city of Detroit
   have approved estimates of taxes for a given year in excess
   of an amount claimed by the mayor and corporation counsel
   to be the legal limit under the municipal charter, that the
   mayor and said counsel have published their opinion that the
   tax levy is illegal and many taxpayers and bond buyers will
   defer to the opinion so made public and cause injury to the
   city, is insufficient to confer jurisdiction upon the court.

2. SAME—TAXATION.

   A bill filed to secure the determination of a court in chancery
   that a tax levy or bond issue is valid is not within any recog-
   nized branch of equitable jurisdiction.

3. SAME—PLEADING.

   Jurisdiction may not be predicated upon the prayer for relief
   unless the bill avers sufficient facts to confer it.

4. SAME.

   Questions of a purely academic sort will not be determined by
   the courts.

Appeal from Wayne; Murfin, J.   Submitted Novem-
ber 6, 1911.   (Docket No. 52.)   Decided December 8,
1911.

Information by Franz C. Kuhn, attorney general of
the State of Michigan, upon the relation of Milton A.
McRae against William B. Thompson and others.   From
a decree dismissing the information, relator appeals.
Affirmed.

*Franz C. Kuhn,* Attorney General (*Fred A. Baker,* of counsel), for appellant.

*P. J. M. Hally,* for appellees Mayor, etc., of Detroit.

*Divie B. Duffield,* for appellees board of education and library commission.

*James H. Pound,* for appellee board of water commissioners.

*Henry Ledyard,* for appellee commissioner of police.

The information in this case is filed by the attorney general upon the relation of Milton A. McRae, a taxpayer of the city of Detroit and president of the board of commerce of said city. It sets out that defendant William B. Thompson, who is mayor of Detroit, did on April 4, 1911, address a communication to defendant the common council of Detroit, in which he transmitted to that body an opinion of defendant Patrick J. M. Hally, who is corporation counsel of said city, relative to the legal limit of the rate of taxation in said city under its charter. The information further recites that since said date said defendants, Thompson and Hally, have persistently claimed before the common council and the board of estimates and in the public press of said city:

" (1) That the annual tax levy of the city of Detroit is limited by the home rule act of 1909 to 2 per cent. of the assessed value of the real and personal property of the city; (2) that bonds issued in lieu of taxation for schoolhouses, public sewers, and public buildings must be included in determining whether the 2 per cent. limit is exceeded; and (3) that taxes levied for school purposes, and bonds issued for the purchase of lots and the erection of school buildings, must be included in determining whether the limits of taxation or of indebtedness of the city of Detroit, fixed by charter or law, are exceeded."

Proceeding, the information sets out at large the proceedings of the board of estimates and the common council, from which it appears that those two bodies have ap-

proved estimates of taxes for the fiscal year commencing July 1, 1911, and authorized bond issues largely in excess of any sum possible had the opinion of the corporation counsel been followed. It is further averred that, not only because of their official positions, but by reason of their learning and experience in their several departments, the opinions of defendants Thompson and Hally will be held in great favor by very many taxpayers in the city and lead them to refuse to pay their taxes, and that said opinions will cast suspicion upon the said proposed bond issues, and either prevent the sale thereof or cause such sale to be made at a higher rate of interest than would have to be paid if there was no question concerning their validity.

The prayer for relief is as follows:

"(1) That under its existing charter the annual tax levy of the city of Detroit is not limited, by the home rule act of 1909, to 2 per cent. of the assessed value of the taxable property in the city.

"(2) That bonds issued in lieu of taxation are not to be included in determining the amount of the annual tax levy.

"(3) That taxes for school, library, and police purposes, and bonds issued for school and library buildings, are not to be included in determining whether the limitations imposed by the city charter are being exceeded.

"(4) That the estimates of the annual tax levy for 1911 of the common council and board of estimates are not excessive, and the same and every part and portion thereof are perfectly legal and valid.

"(5) That the sewer bonds authorized and approved by the common council and the board of estimates would be legally issued and create binding obligations of the city of Detroit.

"(6) That the Ferry Field bonds, art museum bonds, and hospital bonds, authorized and approved by the common council and the board of estimates, would be legally issued and create binding obligations of the city of Detroit.

"(7) That the public school bonds, and the public library bonds, recommended by the board of education, and the library commission, and authorized and approved

by the common council and the board of estimates, would. be legally issued and constitute binding obligations of the school district of the city of Detroit.

"(8) That the waterworks bonds recommended by the board of water commissioners and authorized by the common council and the board of estimates would be legally issued and lawfully pledge the credit of the city and water rates for their payment.

"(9) That such further orders and directions may be had as the nature of the case and equity and justice may require.

"(10) That in case any proposed tax or bond issue is found to be excessive and beyond the limitations fixed by charter or law, or otherwise illegal, that the common council of the city may be directed to reduce and reform the said estimates and bond propositions and make them comply with all legal restrictions.

"(11) That said William B. Thompson and Patrick J. M. Hally and all other officers and agents of the city of Detroit, may be temporarily and perpetually enjoined and restrained from giving out or proclaiming that the said proposed tax levy and bond issues are illegal in any respect whatever.

"(12) That such further and other relief may be granted. by the court as may be agreeable to equity and good conscience."

To this information defendants Heineman, the Detroit library commission, and Croul, filed answers in effect admitting the averments of the information. The other defendants, by Patrick J. M. Hally, the corporation counsel, demurred. The first ground of the demurrer is stated. to be: "Because it does not show a legal injury."

BROOKE, J. (*after stating the facts*). We are met at the outset by the question of the jurisdiction of the court to determine the matters involved. Counsel for relator cites many authorities which, it is asserted, establish the jurisdiction of the court in the case presented. Among them are the following: *Attorney General* v. *City of Detroit*, 26 Mich. 263; *Attorney General* v. *Moliter*, 26 Mich. 444; *Attorney General* v. *Board of Auditors of Wayne County*, 73 Mich. 53 (40 N. W.

852); *McMullen* v. *Ingham Circuit Judge,* 102 Mich. 608 (61 N. W. 260); *People* v. *Ingersoll,* 58 N. Y. 1 (17 Am. Rep. 178).

Many cases are cited in each of the foregoing authorities, several of which are analyzed by counsel for relator. In *Attorney General* v. *City of Detroit, supra,* Justice COOLEY said:

"The right of the attorney general to proceed in equity to enjoin an abuse of corporate power, consisting in the appropriation of corporate funds in a manner not justified by law, appears to me to rest in sound principle.   *   *   * The attorney general does well to interfere when a municipality assumes to do injurious acts which the State, in conferring the power to act at all, has expressly prohibited.   *   *   *   Every misuse of corporate authority is in a legal sense an abuse of trust; and the State, as the visitor and supervisory authority and creator of the trust, is exercising no impertinent vigilance when it inquires into and seeks to check it."

It is, we think, apparent that the power of the State through its attorney general to file informations involving the validity of municipal action is an exercise of its visitatorial authority to enjoin municipal corporations from doing those acts which are prohibited or which are in excess of their corporate powers.   The essence of such an information is necessarily the averment of some transgression of law by the municipality or it officers.

We search in vain the information before us for such an averment.   It sets out the acts of the common council and board of estimates in the premises, but alleges no invalidity therein; indeed, by inference it avers their entire legality.   The prayer is, in substance, that the tax levy and the several bond issues may be determined to be valid, but that, if any illegality in any particular be found, its correction may be directed, and that the mayor and corporation counsel may be enjoined from proclaiming the illegality of either the levy or the bond issues.

It is not pointed out that either the mayor or the corporation counsel has any official duty to perform in con-

nection with the tax levy or the bond issues, nor are they or either of them or any other municipal officer or body charged with any breach of official duty either by misfeasance or nonfeasance.

The only affirmative relief sought is an injunction restraining the mayor and the corporation counsel from proclaiming their opinions as to the validity of the proposed tax levy and bond issues. No authority is cited which in our opinion even remotely supports the proposition that equity may assume jurisdiction for this purpose.

The principal and avowed purpose of the information, however, is to secure from the court an adjudication that the proceedings set out therein are legal and that the tax levy and proposed bond issues are valid; or, in case any part thereof be found illegal, such illegality be pointed out and directions given.

A bill filed for such a purpose does not come under any known head of equitable jurisdiction. If this information will lie, there is no reason why the court may not be called upon to certify to the legality of every municipal tax levy or bond issue made in the State upon the mere statement of the proceedings taken and the importance of a determination of their validity, without any averment of illegality in the proceedings, or the breach of any official duty. The prayer that the court, if it find any particular portion of the tax levy or bond issue illegal, direct the correction of such illegality, is no more than an invitation to the court to discharge the duty that would rest upon it, if it had jurisdiction.

Moreover, jurisdiction may not be predicated upon the prayer for relief; that depends upon the allegations of fact. The prayer is no more than a demand for the relief to which the relator believes himself entitled under the facts stated. The difficulty with the proposition before us is well stated by counsel for relator. He says:

"If Mayor Thompson and Corporation Counsel Hally had had the courage of their convictions, they would have become relators in an information by the attorney general

to compel the common council to reduce the tax levy and the bond issues for 1911 to the limits prescribed by the opinion of the corporation counsel.   Under the English and the Michigan cases cited in our brief below there can be no doubt but such an information would be sustained."

In this contention, we quite agree with counsel, if the information contained the necessary averments of illegal action or breach of duty.   Nor would it be of consequence, in such case, that the information was filed upon the relation of a citizen and taxpayer instead of upon that of the mayor and corporation counsel.   But no such case is before us.   The learned circuit judge in passing upon the question said:

"It may be said, without fear of successful contradiction, that the settled, well-understood law of this country is that courts will not pass upon questions merely academic.   The opinion of a court is merely its reasoning in reaching a conclusion in a controverted question where adverse interests are claimed and represented, but no case can be found where the court has permitted the question to be put as to what the decision would be were the controversy presented to the court upon a given state of facts."

We agree with this statement of the law.   See *Little* v. *Bowers,* 134 U. S. 547 (10 Sup. Ct. 620); *California* v. *San Pablo, etc., R. Co.,* 149 U. S. 308 (13 Sup. Ct. 876); *Lord* v. *Veazie,* 49 U. S. 251; *Hahn* v. *City of Westport,* 135 Mo. 120 (36 S. W. 663; *State* v. *Dolley,* 82 Kan. 533 (108 Pac. 846); *State* v. *Lambert,* 52 W. Va. 248 (43 S. E. 176); 3 Am. & Eng. Enc. Law (2d Ed.), pp. 160, 341 *et seq.,* and notes.   We must hold that the questions presented are upon this record purely academic.

The judgment is affirmed.

OSTRANDER, C. J., and STEERE, MOORE, and STONE, JJ., concurred.