## The Attorney General on the relation of Calvin A. Cook and another v. The City of Detroit and others.

*Attorney general: Municipal authorities: Abuse of corporate power: Paving: Equitable jurisdiction.* The attorney general may proceed in equity to enjoin an abuse of corporate power, consisting in the appropriation of corporate funds in a manner not justified by law, such as the acceptance by city authorities, of a bid, and the awarding of a contract, for paving a street, contrary to the city charter.—CAMPBELL, J., reserving his opinion.

*Basis of interference by attorney general.* And it is not necessary to support such a suit, to show that the money involved is about to be appropriated to a purpose other than that for which it was raised; it is the unwarranted use of the money which warrants the interference, and the purpose for which, or pretense upon which, it was raised, is immaterial.

*Attorney general: Public interest: Equity jurisdiction: Pecuniary interest: Amount.* This remedy, however, is somewhat extraordinary, and the abuse complained of must be one of a substantial nature, and not of a character merely technical and unimportant, to justify a resort to it; and where the only interest the public can have in the matter is one of a pecuniary character merely, and the amount involved is less than the minimum of equitable jurisdiction as fixed by the statute, and especially where the error is simply one of judgment on the part of the corporate authorities, the jurisdiction will not be maintained.

*Paving streets: Advertising for proposals: Patented pavement: Competition.* In advertising for proposals to pave a street, under a charter requiring contracts to be publicly let to the lowest responsible bidder, it is not necessary that the kind of pavement to be put down should first be determined, but patented wood pavement may be put in competition with unpatented stone, and two or more kinds of patented wood pavement, essentially different in construction and cost, can be included in the same notice, which calls only for proposals for the paving of one street.

*Paving streets: Competition: Lowest responsible bidder: Discretion.* Tho purpose of this provision in the charter is to secure competition among contractors for public works and supplies, and to give the public the benefit thereof; and something is necessarily left to the discretion of the city authorities, and they must determine in each case what competition the nature of the case will admit of, and what is the best method to secure it.

*Bids for paving: Competition: Relative value: Lowest bid.* It being lawful to invite competition in this manner, it is also lawful, in passing upon the bids, to have regard to the relative value of the kinds bid for, and the rejection of the kind for which the bid is lowest, is, therefore, not necessarily erroneous.

*Patented pavements: Responsible bidder.* Whether, where there are two bidders for the same patented pavement, the common council have the right to reject the lowest bid on the ground that the persons making it, having no right under the patent to lay it, are not responsible bidders, notwithstanding they have filed a bond of indemnity, as required by resolution of the council, and to contract with the next higher bidders, who were the owners of the patent: —*Quære?*—CAMPBELL, J., holding the affirmative, CHRISTIANCY, Ch. J., the negative, and COOLEY, J., reserving his opinion.

*Bidders for paving: Expenditures: Estoppel.* Where, however, the lowest bidders in such case, took no steps to compel the city to enter into a contract with them, but suffered the award to stand, and heavy expenditures to be made in reliance upon it, they are estopped thereby from setting up any claim; and their appearance as relators in a proceeding by the attorney general on behalf of the state, will have no effect on that proceeding.

*Heard October 23. Decided November 27.*

Appeal in Chancery from Wayne Circuit.

*L. T. Griffin* and *George V. N. Lothrop,* for the complainant, and relators.

*E. W. Meddaugh* and *J. Logan Chipman,* for defendants, Hilsendegen & Dunn.

*D. C. Holbrook, City Counselor,* for the city.

COOLEY, J.

The right of the attorney general to proceed in equity to enjoin an abuse of corporate power, consisting in the appropriation of corporate funds in a manner not justified by law, appears to me to rest in sound principle. The municipality and its citizens are not alone concerned in such an abuse; the corporate powers have been conferred by the

state, with such restrictions and limitations as were thought important, some of which were imposed for the protection of the corporators against unjust and oppressive action of officials, and others from considerations of general public policy.    It can never be admitted that because the corporation and its members in general, or even all of them, consent to or connive at the setting aside of these restrictions and limitations, the state, which deemed them important, shall not be at liberty to complain, for this would be to annihilate the just and necessary supremacy of the state, and to make the corporators sole judges of what franchises they should exercise, and what powers the corporation should possess over them.    It is the right of the state at all times to keep the grantees of its franchises within the limits prescribed in the grant; and public policy in general requires that serious departures shall not be overlooked, even though the parties injured by the particular act do not complain; for one abuse becomes the precedent for another; and the attorney general does well to interfere when a municipality assumes to do injurious acts which the state, in conferring the power to act at all, has expressly prohibited.    It is conceded that he has the right to enjoin the misappropriation of a charitable fund held by the corporation, though held for the benefit of itself or its corporators; and had the fund in this case been held by the city as a donation for the pavement of its streets under the like conditions as to contracts to those prescribed by the charter, his authority to file the bill would have been clear.    But, as between such a case and one where a fund has been raised by taxation for a like purpose, I do not perceive any such distinction as would create a difference in his right to intervene; and it would seem to be equally clear where the state has allowed the fund to be raised on certain conditions only, as where an individual has given a fund on

the like conditions. Every misuse of corporate authority is in a legal sense an abuse of trust; and the state as the visitor and supervisory authority and creator of the trust, is exercising no impertinent vigilance when it inquires into and seeks to check it. It must be conceded, I think, that this doctrine is not very fully settled by authority in this country, but this is perhaps because in very many cases individuals have been allowed to file bills when the question involved was one rather of public than of private concern; a practice which we are of opinion has been carried to an unwarranted extent, and which is much restricted in this state by the decision in *Miller v. Grandy, 13 Mich., 540.* But in England the right of the attorney general to file a bill in cases of this nature seems to be recognized; and without examining the cases in detail, where the principle seems to me so plain, I refer to *Attorney General v. Brown, 1 Swanst., 265 ; Same v. Compton, 1 Younge & Col., 416 ; Same v. Andrews, 2 Mac. & Gor., 225 ; Same v. Eastlake, 11 Hare, 205 ; Same v. Birmingham, Law Rep., 3 Eq. Cas., 552 ; Same v. Improvement Commissioners, Law Rep., 10 Eq. Cas., 152 ; Same v. Norwich, 16 Sim., 226 ; S. C. on appeal, 21 Law J. Rep. N. S. Ch., 139 ; Same v. Lichfield, 13 Sim., 547,* as cases which recognize more or less directly this doctrine. Nor can I concur in the argument of the city counselor that, to support the suit, it must appear that the money involved is about to be appropriated to a purpose other than that for which it was raised. If there was no right to make the contract on which the money is proposed to be applied, it was an abuse of the corporate franchise to raise it at all; but when it has been received in the city treasury, any application of it upon an unlawful contract is equally a misappropriation, whether such an application had previously been contemplated or not. It is the unwarranted use of the money that justifies the

interference, and the pretense upon which it was raised is not important to the question of jurisdiction.

Where, however, the attorney general is to intervene in corporate affairs on behalf of the state, the abuse should be one of a substantial nature, and not of a character merely technical or unimportant. It should appear that the public has a substantial interest in the question; the right involved should be a public right, or at least not a private right merely; the wrong done or attempted, if it consist solely in a misuse or misappropriation of funds, should be either one involving questions of public policy, or, where that is not the case, the amount involved should be something more than merely nominal; something that it is not beneath the dignity of the state to take notice of and protect by such proceeding. The remedy is somewhat extraordinary, and substantial grounds ought to appear to justify a resort to it. · It becomes necessary, therefore, to consider whether any such substantial grounds support it in the present case.

The wrong complained of here is a disregard of the provisions of the city charter, which require contracts to be publicly let to the lowest responsible bidder. The facts appear to be that the common council, having determined to cause St. Aubin avenue to be paved, instead of determining in advance what particular kind of pavement should be put down, and confining their invitation for proposals to that kind, caused specifications for each of several different kinds of wood and stone pavement to be prepared and filed with the controller, and then advertised that sealed proposals would be received during a time specified, for paving said avenue with either wood or stone pavement, according to the specifications thus placed on file. It further appears that in response to this advertisement no fewer than fifty-seven proposals were received from different parties, for the

putting down of various kinds of wood and stone pave-
ment, some of which were covered by patents, and others
were open to be put down by any parties.    The Detroit
Ironizing & Paving Company submitted a proposal for
putting down the Ballard patent pavement, with Medina
curb stone, for twenty-four thousand four hundred and
fifty-nine dollars and ninety-five cents, and Hilsendegen &
Dunn proposed to do the same for twenty-four thousand
six hundred and forty-two dollars and forty-six cents.    These
were the only bids for that kind of pavement, but there
were proposals for putting down other pavements at much
smaller sums.    Hilsendegen & Dunn were the assignees of the
Ballard patent, but the Ironizing & Paving Company tendered
to the city ample indemnity against any liability to the
owners of the patent in case their proposal should be
accepted, and they were justified by a previous resolution
of the council in supposing that such security would be
regarded as sufficient.    The council, however, having deter-
mined to put down the Ballard pavement, rejected the bid
of the Ironizing & Paving Company, on the ground that
they had no right to lay it, and therefore were not respon-
sible bidders within the meaning of the law, and accepted
the bid of Hilsendegen & Dunn, the assignees of the pat-
ent, whose right was supposed to be clear.    It is a pay-
ment of moneys upon the contract with these parties, which
it is proposed to enjoin in this suit.

The first question involved in the merits of the suit is,
whether the council were justified in proceeding in the man-
ner mentioned to obtain proposals.    It is insisted, on behalf
of the attorney general, that the kind of pavement to be
put down should first be determined, and that bids should
be called for and competition invited for that kind alone.
It is denied that wood pavement can be put in competition
with stone pavement, or that two kinds of wood pavement,

ATTORNEY GENERAL v. DETROIT.

essentially different in construction and cost, can be included
in the same notice which calls only for proposals for the
paving of one street. The law, it is argued, intends that.
the bids shall settle the right to a contract on a mere
inspection of the prices named; but if the bids are not to.
be all directed to the same specifications, they settle noth-
ing, and it will always be in the power of the council to.
reject the lowest bid on the pretense that it is for an
inferior pavement, whether such is the truth or not,.
and to accept the bid of a party they desire to favor, on
the claim that, though his bid is higher, yet it is for a bet-
ter pavement, and consequently such bid is, all things con-
sidered, the most for the interest of the city, and therefore
to be deemed the lowest.

It is not to be denied that there is a great deal of truth
in this argument; and if such a construction of the charter
as the complainant contends for, will put it out of the
power of the council to practice favoritism in awarding
contracts, it ought to be sustained as the one which the
legislation must have intended.    We are not aware, how-
ever, that it has ever been supposed that the provision of
the charter now in question could have that highly desirable
effect; on the contrary, it has often been observed that the
most severe and stringent regulations of this nature may
be administered dishonestly, though according to the strict
letter of the law, so as not only to fail to give the pro-
posed protection to the public, but, on the other hand, so
as to operate as if purposely devised to enable dishonest
persons to plunder the public with impunity.    The require-
ment that contracts shall be let to the lowest bidder is, in
many cases, peculiarly susceptible of abuse.    Its purpose is,.
to secure competition among contractors for public works
and supplies, and to give the public the benefit thereof.
In some cases the most ample competition would be invited.

by presenting to bidders complete and particular specifications, which indicate the precise things wanted or which are to be done, and leave nothing to discretion or negotiation afterwards. But this could only be true where the case was such that many persons could bid for the work or materials, and would have a legal right to do the one and furnish the other, and where the materials were not monopolized in single hands, but were readily obtainable from several sources. If a patented article were desired, which was owned by a single person who refused to sell the right to territory, or to fix a royalty, or if stone or any other material were required, and a single person owned all within a practicable distance of the place where it was to be used, nothing could be more obvious than that proposals which confined bids to the particular article or material, would invite no valuable competition, and that the protection of the public must lie in the power of the council to reject unreasonable offers. In such a case nothing is easier than for the council to obey strictly the letter of the law, and yet dishonestly and corruptly award a contract to one who is lowest bidder for no other reason than because no one can bid against him, and who, having a practical monopoly, is allowed to fix his own terms.

Now, if the purpose of the charter is to secure competition in work or supplies for the public, something is necessarily left to the discretion of the council; and they must determine in each case what competition the nature of the case will admit of, and what is the best method to secure it. If they invite proposals for a particular thing or process, they necessarily in so doing exclude everything else which might have been substituted for the thing called for; and there is no clearer field for corruption and favoritism than in shaping proposals, if in fact the city is in corrupt hands.

ATTORNEY GENERAL *v.* DETROIT.

The matter of paving affords an apt illustration of this truth. From the proposals before us it would be a reasonable inference that there are several patented wood pavements nearly equal in value and cost; but if the council call for proposals for one only, they necessarily exclude all the others; and I am aware of no legislation, and I can conceive of no process, by which they can be compelled always to make the selection from public motives exclusively, if their disposition shall be to do otherwise. It would be worse than idle for the law to mark out, or for the council to follow, any one unvarying course in these cases. The same course which, under some circumstances, would be manifestly proper and most for the public good, under others would be so plainly detrimental, and place the public so completely at the mercy of interested parties, that it could not be adopted by a body having any liberty of choice without justly subjecting themselves to the charge of corruption. It must therefore be manifest that any inflexible rule which the law should lay down, and which should trust nothing to the integrity, and nothing to the discretion of the council, must necessarily work mischief in many cases, and it would be productive of good, I think, in few cases, if any.

I do not doubt that it was competent for the council, in this case, to have confined the bids to what is called the Ballard pavement. But if this had been done, it must be obvious that the best method would not have been adopted to invite competition, or to obtain cheap pavements. Assuming that pavement to be protected by a valid patent, the assignees of the right were in position to fix their own terms in a contract, or for the permission to lay it. But if another kind was of nearly equal value, competition might, perhaps, be had by putting the one against the other, and inviting bids for both. The greater the number

of such pavements, the larger is the opening for competition. It is quite true that if, when the bids are in, the council may reject one kind on the ground of its being less valuable than another, it must follow that the bids are not conclusive upon the right to a contract; but that a right in the council to determine the kind is more likely to be exercised from dishonest motives after the bids are in than it would be in deciding what bids should be received, is not, to my mind, very apparent. On the contrary, the broader the door that is opened to competition, the greater will be the number of those who will be interested in watching the proceedings to see that just awards are made, and impartial judgments pronounced. If there is danger of corrupt understandings and combinations when there are a score of bidders, the danger is proportionately increased when the door is closed against all but one or two. And where, as in this case, the owners of the patented processes are not only invited to bid against each other, but are also put in competition with all who may offer to lay the kinds not patented, it is obvious that the council, in their invitation for bids, have done all that the nature of the case admitted of being done to secure competition for the public benefit. The proposals have had the spirit of the law in view, and, I think, are within the letter also.

If it is lawful to invite competition in this manner, it must also be lawful, in passing upon the bids, to have regard to the relative value of the kinds bid for, and the rejection of the kind for which the bid is lowest, is therefore not necessarily erroneous. But the rejection of the lowest bid for the particular kind fixed upon, raises other questions.

When bids are thus called for, all bidders for a particular kind of pavement are bidders against all others, in a certain sense, but they are also bidders against each other

in a more particular sense.   It would be ·the duty of the council, when all bids were in, to examine all, and to select the kind of pavement for which the bids, all things considered, were relatively the lowest.    They might thus, perhaps, reject the kind they would have preferred in advance, but for which they find all bids exorbitant, and determine upon another, because, in their opinion, the offers made for it are more satisfactory.    But when the kind is selected, they have no discretion to be exercised in a choice between responsible bidders.    The lowest has an absolute right to the contract.

In this case there were two bidders for the Ballard pavement, and the council awarded the contract to the highest. It is conceded that they did this on the sole ground that the lowest had no right to lay it, and consequently could not be considered a responsible bidder.    Whatever security such a party might tender, it is said, could not be adequate, because, if he had not the right, he might be enjoined in his attempt to put it down.    And, at best, the city would only take upon itself the risk of long and expensive litigation by accepting such a bid, with indemnity which might or might not, after a time, prove adequate.

Whether the council was justified in rejecting the lowest bid under the circumstances and upon the ground stated, is a question I do not think we are called upon by this record to discuss, and I shall express no opinion upon it. The company who were the lowest bidders took no steps to compel the city to enter into a˙contract with them, but suffered the award to stand, and heavy expenditures have been made in reliance upon it.    They may, therefore, fairly be held estopped from setting up any claim now, and their appearance in this case as relators is of no importance. The only considerations to be weighed, are those of a public nature.    There are no indications of a deliberate pur-

pose on the part of the council to disobey the law and misuse their franchise, but if they have erred, it has doubtless been through mistake in judgment. All the interest which the public can have in the matter must, therefore, be of a pecuniary character, and be measured by the difference between the two bids. That difference is less than one-thirteenth of one per cent. of the whole sum, and less than one-sixth of this falls upon the city; the remainder being payable by individual lot owners. The lot owners do not complain, and when the amount thus becomes an individual charge, the party concerned may properly be allowed to waive legal objections and make payment if he sees fit. The fund to be considered is, therefore, only that portion of the difference between the bids which would fall upon the city at large, and which in this case would constitute the measure of the public wrong. But that sum is considerably below the sum named in the statute as the minimum of equitable jurisdiction. And I see no reason for permitting the attorney general to invoke the process of equity on public grounds when the considerations are only pecuniary and involve less than thirty dollars, while one hundred is essential to give jurisdiction in private suits. The statute should apply by analogy, if it does not expressly. The dignity, or the interest, or the public policy of the state, is not concerned to interfere for the correction of a mere error of judgment on the part of corporate authorities, where the injury is only pecuniary, and so far as it affects the public is so insignificant, and where the private parties who are chiefly concerned have seen fit to waive their objections, if they had any.

The result is that a case of equitable jurisdiction is not to my mind presented, and the decree appealed from should be affirmed, with costs against the relators.

GRAVES, J., concurred in the result.

CAMPBELL, J.

Whether the attorney general can interfere in such cases without some statute to determine the extent and conditions of such interference, is a question on which I entertain some doubts, and I express no opinion upon it. I think it very clear that in this case he had no such right and no equity, and upon this I concur with the general views of my brother Cooley.

I think the method of competition adopted by the council here, was the best one which could be devised where patents are not held open to the use of all persons upon a fixed royalty. And I think they were fully justified in regarding no one as a responsible bidder who has no right to do the work, and could not do it without danger of being enjoined by the patentee. The object of the law is to secure that the work may be done without interruption, and not to invite litigation.

I think, therefore, that the action of the council was not illegal, and cannot be complained of.

CHRISTIANCY, CH. J.

I concur with my brother Cooley, that the mode adopted for advertising for bids for the pavement, was legal and proper.

The object of *section twelve, chapter eight, of the charter*, in requiring contracts of this kind to be let to the lowest bidder, after publication of notice, was to secure competition, and to prevent corrupt combinations between city officers and contractors.

The council had the right to determine the kind or species of pavement to be adopted, as well as to reject even the lowest bid for any particular kind, though that should have been previously adopted, and the only one for which

bids were invited, and to decline to make a contract, or advertise anew, as, in their opinion, might be best for the public interest.

When the pavement of a street is in contemplation, there are two kinds of competition which it is very desirable to create among those who may wish to undertake the work: *First,* That between the *different kinds of pavement,* or those prepared to engage in putting them down; and *second,* that between parties prepared to put down the *same kind.*

It is the latter species of competition only, which the charter requires the city officers to take measures to secure, and it is for *this* purpose only, that it requires publication of the notice, plans and specifications.

The biddings referred to in the provision in question, are biddings for the *same particular thing,* to be done according to the same specifications. And no bids for essentially different kinds of work or pavements, and referring to different specifications could be recognized as coming in competition with each other, for the purpose of determining the lowest bid, within the requirements of this section, without opening the door to the same corrupt combinations, and furnishing facilities for the same fraudulent practices, which it was the purpose of this provision to prevent.

There is nothing, however, in the charter, which prevents the city from availing itself, also, of the benefit of the other species of competition, that growing out of the different kinds of pavement seeking the public favor and adoption.

And as the relative cost and value of the respective kinds would form a legitimate element of consideration with the council, in determining which kind to adopt for any particular street, a just regard for the public interest

would certainly warrant, if it does not require, some effort to secure this species of competition, as well as that for any particular kind; as this would not only enable the council to form a more intelligent judgment in determining which kind it is best to adopt, but it incidentally tends, also, to induce fair and reasonable offers for each.

It is therefore highly desirable that the council should have the benefit of this before deciding upon the particular kind of pavement to be adopted.

I see nothing in the charter to prevent this, or which requires the council to determine upon the kind which shall be adopted, before proceeding to advertise for bids; since, if they had thus previously determined and invited bids only for the particular kind so decided upon, they would not be bound to accept even the lowest bid, but might then change their plan, or even determine not to pave the street.

I, therefore, see no difficulty in securing both kinds of competition at the same time by preparing proposals, plans and specifications for each kind of pavement for which competition is to be invited, and combining the whole in one notice, as was done in this case.

The notice, by referring to the respective specifications, gave an equal opportunity to all persons, not only to enter into competition with those seeking to contract for any *other* kind, but also (within the letter and spirit of the charter) to compete with all who chose to bid for any *one particular kind.*

But those bids only which had reference to the same particular kind, and to the same specifications, could be considered as competing bids, for the purpose of determining who was the lowest bidder within the meaning of the charter.

The only competing bids, therefore, for this particular

kind of pavement finally decided upon, were those of Hilsendegen & Duun (to whom the contract was let), for twenty-four thousand six hundred and forty-two dollars and forty-six cents, and that of the Ironizing & Paving Company, for twenty-four thousand four hundred and fifty-nine dollars and ninety-five cents, the latter being the lowest bid by one hundred and eighty-two dollars and fifty-one cents.

This lowest bid should, in my opinion, have been accepted; and I think the council had no rightful or legal discretion to reject it on the ground that the next highest bidders were the owners of the patent for that kind of pavement, and the lowest bidders had not acquired the right to use it, and that they were not, therefore (as was claimed), "responsible bidders" within the meaning of the charter. They had filed their bond of indemnity (with sufficient sureties), which the resolution of the council had provided for just such a case, and which the resolution (still in force) indicated was to be held satisfactory in the very contingency which had occurred; and that bond was in all respects satisfactory and accepted by the controller.

I adhere, without reservation or qualification, to the decision of this court in *Hobart v. The City of Detroit, 17 Mich., 246*, and accept all its legitimate results. I do not think the council had, or that this court have, the right, conclusively to assume (without giving them the chance to make the attempt) that it will be impossible for the lowest bidders to obtain the necessary right or privilege from the patentees, or successfully to contest the validity or ownership of the patent. The bond they had given, as well as the contract they were ready to execute, would have made it their interest to sacrifice enough (if necessary) to make it an object with the patentees to sell them this right, so so far as this street was concerned. And if it should be

found that this company (the lowest bidders) could not, or did not, go on with the work, or complete it within the time stipulated, I am not prepared to hold that the city could not find an adequate remedy by forfeiting the contract, and proceeding to advertise anew, and making a new contract for this or any other kind of pavement, or by suit upon the bond of indemnity, or by both these modes.

But while I concur with my brother Cooley, that the attorney general may, in cases of this character, invoke the aid of a court of chancery to prevent the usurpation of ungranted powers by the officers of municipal corporations; yet, notwithstanding the acceptance of a bid which the officers of the council had no right to accept, I agree with my brother Cooley, that this case, under the peculiar circumstances disclosed by the pleadings, is not one in which it would be just or proper to grant the relief sought by perpetual injunction to restrain the payment for the work done, or to be done under the contract.

In large classes of cases, and perhaps as a general rule, when the attorney general may appeal to the court to restrain such official corporate action, the only inquiry would doubtless be, whether such officers, in the action taken or threatened by them, have exceeded, or are attempting to exceed the legal limits; and the question should be decided as one purely of strict law, however small the amount of injury to the public interest done or threatened, or however great the amount of injury which may be done to private parties by the remedy sought.     As, *first*, where the official action claimed to be in excess of authority has not yet been taken or completed, but is only threatened or *in fieri ;* *second*, where, though the action may already have been taken, it has been fraudulent or corrupt (and the rule should be the same as to third parties whose interests are involved, if they have acted in bad faith); *third*, where the

application for the interposition of the court has been made
before other parties, in honest reliance upon such official
action, have made expenditures, or incurred obligations to
any considerable amount; and *fourth,* if the injury to the
public interests to be apprehended, be of great magnitude,
or of a serious character, when the application to the
court has been made as promptly as the nature of the
case would admit, though such expenditures may already
have been made, or obligations incurred, by such third
parties, whatever the amount.

But where, as in this case, it satisfactorily appears to the
court, that the council, as well as the parties contracting
on the faith of their action, have acted in good faith, and
that there has been ample time, either to have applied to
the court to prevent the execution of the contract, or to
have commenced the present proceeding to enjoin the pay-
ment for the work, a large share of which has been done,
and more than ten thousand dollars expended, which would
not in all probability have been done or expended, had this
proceeding been instituted with reasonable promptness; the
equities of these parties are not to be disregarded on any
slight or technical grounds, nor on account of any slight
or trivial injury to the public interest to arise from the
payment to be made for the work; and to warrant a per-
petual injunction against such payment, the court must
see that, unless enjoined, the public are likely to suffer
injury or loss of somewhat grave and serious magnitude;
something at least beyond a mere nominal or trivial injury.
And under such circumstances the case should be governed
by the same principles of equity as usually govern the judi-
cial discretion in granting the remedy by injunction in other
cases.

Now, the amount of the tax upon the public, or the city
at large, in consequence of accepting the higher, instead of

the lowest bid, is less than thirty dollars, a sum so utterly insignificant in comparison with the amount already expended upon the work by the contractors, that no court can fail to see, under the circumstances of this case, that the perpetual injunction against paying for the work, would produce a vastly greater amount of evil than that sought to be remedied by it. It would, in fact, operate as a gross and cruel wrong, which, if sanctioned by the court, would prove much more injurious to the public interest than the loss of the paltry sum of thirty dollars excess of taxation upon the taxable property of the city.

I therefore concur in holding that the case made by the pleadings does not warrant us in awarding the injunction prayed for, and that the decree dismissing the bill should be affirmed.