FRANZ U. BURKETT, ATTORNEY-GENERAL EX REL.

vs.

ERNEST L. BLAISDELL ET AL., IN EQUITY.

Kennebec.      Opinion, January 16, 1941.

*Harvey D. Eaton*, for plaintiff.
*F. Harold Dubord*,
*H. C. Marden*, for defendants.

SITTING: STURGIS, C. J., THAXTER, MANSER, WORSTER, JJ.

MANSER, J.   The bill in this case alleges facts which call to the attention of the court the following situation:

A tax collector of Rome, Maine, collected automobile excise taxes from a number of inhabitants of the town, for a period of five years, and did not pay the same over to the town. The money thus lawfully exacted from automobile owners has been diverted to the private use

of the collector. The town has been deprived of funds which should have been available for municipal purposes. The taxpayers and inhabitants have correspondingly suffered. The town officers, upon whom rested the responsibility of compelling the collector to account for such collections, have refused to do their duty.

The present proceedings were instituted by the attorney-general on relation of ten citizens and taxpayers of the town. The defendants are the tax collector and the selectmen of Rome. The relief sought is the payment by the tax collector of the sum unlawfully converted by him, coupled with a prayer for general relief.

To the bill demurrers were filed by the several defendants. Assigned as causes for demurrer were that the plaintiffs had an adequate remedy at law and that they have not stated a case which entitles them to relief in equity. The demurrers were sustained without opinion, and the bill dismissed with costs. The case comes forward on appeal from the dismissal decree. Such procedure has judicial sanction, *Masters* v. *VanWart*, 125 Me., 402, 134 A., 539.

No specific cause of demurrer is alleged as to the right of the attorney-general to institute the action, but much stress is laid upon that element in the briefs of opposing counsel. This contention should have been raised properly by the pleadings, but jurisdictional questions will be considered when called to the attention of the court, although informally. *Powers* v. *Mitchell*, 75 Me., 364; *Power Co.* v. *Railroad*, 113 Me., 103, 93 A., 41.

Dillon, in his valuable treatise on municipal corporations, discusses the subject with great lucidity, and collates the decisions and authorities. Dillon, Mun. Corp., Secs. 1573-1588, inclusive. The author sums it up as follows:

"But it is substantially agreed that any taxable inhabitant, or perhaps any citizen of the municipality, has such an interest to prevent or to avoid illegal or unauthorized corporate acts that he may be a relator, on whose application the proper public officer of the Commonwealth may, on behalf of the public, file the requisite bill in cases which fall within the jurisdiction of equity, to enjoin the menaced illegal or wrongful act, or if it has been consummated, to have relief against it." Sec. 1586.

"That, in the absence of special controlling legislative pro-

vision, the proper public officer of the Commonwealth, which created the corporation and prescribed and limited its powers, may, in his own name, or in the name of the State, on behalf of residents and voters of the municipality, exercise the authority, in proper cases, of filing an information or bill in equity to prevent the misuse of corporate powers, or to set aside or correct illegal corporate acts." Sec. 1587.

While it may be true that such actions are rarely brought, the reason we may hope is that the occasion rarely arises when officials condone the wrongful acts of their associates and refuse to bring them to book. Such a state of affairs can exist only through sympathy for a defaulting official, or indifference to principles of public integrity. Judicial authority, however, abundantly exists that courts inherently have the right to correct such abuses and that the attorney-general, without statutory authority, is the proper party to present them for consideration.

Our court has already adopted the view that in cases of quasi municipal corporations, such as water districts which are not financed by taxation but by rates paid by individual consumers, and where the interest of taxpayers is negligible, proceedings in equity should not be entertained when brought by taxpayers alone. It points out that a water district, as to rates, service and issues of securities, is under the jurisdiction of the Public Utilities Commission. *Eaton* v. *Thayer*, 124 Me., 311, 128 A., 475, 476. The court states squarely, however,

> "We think that this court has full jurisdiction in equity over this corporation and its trustees, but that the proceeding should be instituted by the Attorney General, not by individual rate payers."

Further, the court in the above case quotes Judge Dillon, Sec. 1577, to the effect that the attorney-general, upon relation of persons interested, has authority to bring cases of equitable cognizance, and which affect the public, to prevent municipal corporations from exceeding their lawful authority or to have their illegal acts set aside or corrected. It then concludes with reference to the issues there raised,

> "It cannot be presumed that the Commission and the Attorney General will fail to act in a proper case."

Counsel for the defense apparently misconstrue the reasoning of the opinion in *Miller* v. *Grandy*, 13 Mich., 540, to which reference is made in the *Eaton Case*, supra. They argue that the attorney-general is merely a nominal party, that the real parties are the ten taxpayers, and consequently the observations of the court in the cited case are pertinent, to the effect that a single voter or taxpayer has no voice in public affairs and can exercise his influence only by his vote, and must therefore bow to the common will, in the instant case, the misapplication of public funds. The controlling statement, however, and the conclusion arrived at is that

> "whenever redress is attainable, it must be sought for by some other minister than a self-appointed private party, in whom the people or their agents have not vested any such supervisory power."

Adhering to the requirement that in cases of remedial relief, the attorney-general, upon relation of persons interested, must institute the proceedings as laid down in *Eaton* v. *Thayer*, supra; *Tuscan* v. *Smith*, 130 Me., 36, 153 A., 289, and *Bayley* v. *Wells*, 133 Me., 141, 144, 174 A., 459, the logic of Cooley, J., in *Attorney General* v. *Detroit*, 26 Mich., 263, 264 although *obiter dictum*, is cogent. He says:

> "The right of the attorney general to proceed in equity to enjoin an abuse of corporate power, consisting in the appropriation of corporate funds in a manner not justified by law, appears to me to rest in sound principle. The municipality and its citizens are not alone concerned in such an abuse; the corporate powers have been conferred by the state, with such restrictions and limitations as were thought important, some of which were imposed for the protection of the corporators against unjust and oppressive action of officials, and others from considerations of general public policy. It can never be admitted that because the corporation and its members in general, or even all of them, consent to or connive at the setting aside of these restrictions and limitations, the state, which

deemed them important, shall not be at liberty to complain, for this would be to annihilate the just and necessary supremacy of the state, and to make the corporators sole judges of what franchises they should exercise, and what powers the corporation should possess over them."

Again, in *Land, Log & Lumber Co.* v. *McIntyre*, 100 Wis., 245, 75 N. W., 964, 69 Am. St., 915, the reasoning is pertinent:

"So the rule is firmly established that where a cause of action exists in favor of a corporation, whatever be its proper remedy, if its governing body refuses to proceed, justice cannot thereby be defeated, for those upon whom the injury indirectly falls may obtain redress in equity. It certainly would be a strange situation if unfaithful officials could plunder a county in the manner alleged in the complaint and be free from danger of being compelled to return their ill-gotten gains, or make good the injury caused by their corrupt conduct, because they had retired from office and the corporation, through its proper officers, unjustly refused to prosecute them. The intelligence and wisdom of the lawmakers, and the boasted power of courts of equity to lay hold of situations where legal remedies stop, and prevent a failure of justice flowing from defective legal remedies, are not rightly subject to such criticisms."

We hold that the attorney-general, ex relatione, is a proper party plaintiff.

Objection is made that redress is not obtainable in equity, because there is an adequate remedy at law. The suggested remedies are:

1. Enforcement of R. S., Chap. 5, Sec. 32, providing a forfeiture of not exceeding $20 for the neglect of a town officer to perform his duty. Such forfeiture is recoverable in an action of debt in the name and to the use of the town by the treasurer. When, under the allegations of the bill, it is apparent that the town itself has a legal remedy for the *entire* amount misappropriated, and refuses to institute it, it is trifling with the gravity of the occasion to say that the town, its citizens and taxpayers, have an adequate remedy for the loss sustained upon the chance or supposition that the town, condoning the

wrong through its failure to act, might be induced to institute legal process to obtain a negligible forfeiture, in lieu of the total sum due.

2. Call of special town meeting under the provision of R. S., Chap. 5, Sec. 4, as amended by P. L. 1933, Chap. 198. The substance of this law is that such meeting may be called upon written application to a justice of the peace of not less than ten per cent of the registered voters. Such meeting, if called, could only direct the selectmen to perform their duty or uphold them in their dereliction. The right to the payment of the money withheld is absolute. It does not depend upon the whim of the electorate. The reasoning quoted from *Attorney-General* v. *Detroit*, supra, sufficiently answers this contention.

3. Petition for mandamus against the selectmen directing them to perform their clear duty. Inasmuch as the selectmen are not charged with any personal default, presumably this means they may be ordered to institute legal action against the collector. As said in Dillon, Sec. 1586:

> "There is no doubt but that the corporation may in its own name bring suits, in proper cases, to be relieved against illegal, unauthorized, or fraudulent acts on the part of its officers. Since, however, experience has shown how liable these corporations are to be betrayed by those who have the temporary management of their concerns, it would never do, we think, for the courts to hold that relief against illegal or wrongful acts can be had only by an authorized suit brought by and in the name of the corporation."

The mandamus, as suggested, would but authorize and direct such a suit. Here all the parties are before the court. The powers of courts of equity are broad enough to fit such a situation as this, which requires remedial relief. Furthermore, though mandamus might lie under circumstances of this kind, we agree with the commentator in 89 Am. Dec. 722 in his note to *Dane* v. *Derby*, 54 Me., 95, there reported, that

> "the fact that a court of chancery has already acquired jurisdiction of the subject-matter of the application will constitute a bar to the application for the writ."

Upon the authority of the cases cited to this rule the foregoing statement is reiterated in the text of 18 R. C. L., Mandamus. 50 Spelling on Extraordinary Relief, Vol. 2, Sec. 1376, puts it thus:

> "The familiar principle then applies, that as between courts of co-ordinate powers, that first acquiring jurisdiction of a cause and being fully empowered to afford complete relief, will not be disturbed or interfered with, but allowed to retain jurisdiction and determine the controversy. From these observations we deduce the conclusion that a showing that a court of equity has already acquired jurisdiction of the same subject-matter embodied in the application for the mandamus, and has full power to grant relief, or to compel specific performance of the thing sought, is a complete bar to the exercise of the jurisdiction by mandamus."

Counsel cite *Attorney General* v. *Boston*, 123 Mass., 460, as authority that the proceeding should be by mandamus. On the contrary, the court, in speaking upon the point, clarifies the ruling in *Attorney General* v. *Salem*, 103 Mass., 138, and says:

> "The true ground upon which that decision rests is that, when no misapplication of funds held upon a public trust and no nuisance to the public are shown, the appropriate remedy to compel performance of a duty imposed upon a corporation by statute is not by decree in equity, but by writ of mandamus at common law."

Here is asserted the malfeasance of a public officer, the breach of a public trust, the withholding of public funds. Under such circumstances, proceedings in equity will lie, when brought by the proper party, to relieve against the consummated wrongful act, and to provide the remedy by compelling restitution. It is not damages which are asked for, but, so far as appears, a specific sum which belongs in the treasury of the town, collected by a public officer and unlawfully retained, with the connivance of the governing board.

If the plaintiff can prove his allegations, he is entitled to a remedy in equity.

There appears, however, to be no sufficient justiciable ground for

sustaining the bill against the selectmen of Rome named as defendants. They are not charged with actual malfeasance.

The entry will be

*Bill dismissed as to defendants George H. LeBarron, Earle Ladd and Paris Mosher.*

*Appeal sustained and decree reversed as to defendant Ernest L. Blaisdell.*

*Case remanded.*