Elzada M. FROST et al.

v.

Barbara C. LUCEY d/b/a Cloyester.

Supreme Judicial Court of Maine.

July 7, 1967.

Jacob Agger, William K. Tyler, Portland, for plaintiffs.

Henry Steinfeld, and Robert A. Wilson, Portland, for defendant.

Before WILLIAMSON, C. J. and TAPLEY, MARDEN and DUFRESNE, JJ.

DUFRESNE, Justice.

The defendant owner of The Cloyester, a summer hotel located on Cloyester Road in South Portland, Maine, appeals from a decree of a single Justice permanently enjoining the operation of the hotel other than between June 1st and October 1st of each year and substantially restricting its activities during the permissive summer operation.

It is undisputed that prior to defendant's purchase of the property in 1964 The Cloyester had been operated only as a summer hotel and the evidence fully supports the single Justice in his findings that the span of its yearly operation did not reach beyond the June 1st to October 1st period. Applying the "clearly erroneous" test as we must, we further acknowledge ample support in the evidence for most of the other findings of the single Justice. In the critical year 1941, when the South Portland zoning ordinance was first enacted, The Cloyester became a nonconforming building and its operation as a hotel a nonconforming use, since it was located in a zone where only single family residences (with certain exceptions not pertinent here) were permitted. The hotel prior thereto had been operated as a relatively small business during the summer months only, guests staying for periods from a few days to several weeks. The dining room facilities fully satisfied the needs of the registered guests and were made available to transients coming in only to be served meals, but the management never made any effort to increase its dining room business for transients by advertisement or otherwise. At no time did the hotel cater to clubs or large parties. There was no problem with traffic in the area. As found by the sitting Justice, the defendant in 1964 began an expansion program designed to make the hotel operation economically profitable. With a purpose to increase the volume of business, a complete central heating system adequate to enable the hotel to render service on a year-round basis was installed at a cost exceeding $25,000; necessary alterations within the limits of the structure and with municipal approval were made, such as the removal of a partition to convert a previously used lounging room to serve as a dining facility. Aggressive solicitation campaigns have substantially increased the transient business, and the hotel has, since the changeover, catered to large parties in defendant's undertaking to serve luncheons, banquets and the like. Due to the increase in the volume of business, the noise level

in the area has risen, especially when large parties were served, with resulting traffic congestion in the neighborhood.

The presiding Justice concluded that the operation of the hotel had changed markedly "in quality and not merely in degree" and permanently enjoined the defendant from

"(a) Operating said hotel or offering to the public hotel and dining facilities therein other than between June 1st and October 1st of each year;

(b) Catering on the premises to parties or groups of transients (not registered and assigned to hotel rooms) where the number of persons in such parties or groups on the premises at any one time exceeds twenty-five; and

(c) Offering the facilities of the hotel to transient guests after the hour of 9:00 o'clock in the evening."

The main issue before the Superior Court was whether and to what extent the present use and operation of The Cloyester was an unlawful extension or enlargement of the hotel nonconforming use under the South Portland zoning ordinance. This issue was raised by four taxpayers and owners of real estate lying contiguous to or in the immediate proximity of The Cloyester, two of whom were year-round residents, who sought in a declaratory judgment proceeding a judicial interpretation of the zoning ordinance and injunctive relief against what they contend is an illegal increase of a nonconforming use.

The stated points on appeal, besides the claim that the decision is against the law and the evidence, question the Court's decree as an invidious trespass against our State Constitution in that it destroys defendant's vested rights to a nonconforming use and constitutes a taking of property without due process of law [undoubtedly meaning without just compensation]. Constitution of Maine, Art. I, § 21.

The pertinent enabling legislation, [30 M.R.S.A. § 4953, which substituted for R.S. 1954, c. 90–A, § 61, as enacted by P.L.1957, c. 405 § 1, as amended by P.L.1963, c. 193] reads as follows:

"1. Scope. A municipality which has a planning board [the evidence indicates that South Portland has] may enact a zoning ordinance dividing it into zones consistent with the proper development of the municipality. The zoning ordinance may regulate the following:

A. Location and use of real estate for industrial, commercial, residential and other purposes;

\* \* \* \* \* \*

2. Part of plan. A zoning ordinance shall be drafted as an integral part of a comprehensive plan for municipal development, and promotion of the health, safety and general welfare of the residents of the municipality.

A. Among other things, it shall be designed to encourage the most appropriate use of land throughout the municipality; to promote traffic safety; to provide safety from fire and other elements; to provide adequate light and air; to prevent overcrowding of real estate; to promote a wholesome home environment; \* \* \*

\* \* \* \* \* \*

5. Application. A zoning ordinance does not apply to structures and uses existing at the time it is enacted, but applies to new structures and uses, and changes in structures and uses made afterward.

A. The changes in structure and use to which a zoning ordinance applies may be defined in the ordinance.

\* \* \* \* \* \*

8. Nonconforming. Any real estate or personal property existing in violation of an ordinance authorized by this subchapter is a nuisance."

\* \* \* \* \* \*

The relevant portions of the South Portland zoning ordinance are as follows:

"Section 5-C. Non-conforming uses

1. Any lawful building or use of a building or premises or any part thereof existing at the time of adoption of this Ordinance may be continued, although such building or use does not conform to the foregoing provisions hereof. If such non-conforming use be abandoned for more than one year, any future use of said building shall be in conformity with the provisions of this Ordinance.

2. Such use may be changed to one having clearly the same character. Such building or use shall not at any time be changed to a dissimilar use nor shall it be extended or enlarged, except for a purpose permitted in the zoning district in which such building or premises is situated. \* \*

3. The reconstruction or restoration of any nonconforming building which may hereafter be destroyed or damaged by fire or other accidental cause is permitted, provided the extent of damage is less than 75 per cent of the assessed value of the building before the damage and provided further that the reconstruction or restored building covers no greater land area and has no greater floor area. Such restoration shall be permitted only if completed within one year from the date of the damage."

\* \* \* \* \* \*

The defendant has not challenged the right of the plaintiffs to maintain this suit for injunctive relief through declaratory judgment proceedings in their capacity of adjoining or nearby property owners and taxpayers who contend additionally that they are specially affected and injured by the alleged violation of the zoning ordinance and seek the enjoinment of a nuisance in law. We will assume, as the parties and the Justice below did, that the plaintiffs have legal standing in equity to restrain the alleged continued violation of the zoning law on the grounds that it amounts to a nuisance in law specially affecting them. See Whitmore v. Brown, 102 Me. 47, 65 A. 516, 9 L.R.A.,N.S., 868; Houlton v. Titcomb, 102 Me. 272, 66 A. 733, 10 L.R.A., N.S., 580; York Harbor Village Corporation v. Libby, 126 Me. 537, pages 546–547, 140 A. 382; Inhabitants of the Town of Windham v. Sprague, Me., 219 A.2d 548; 101 C.J.S. Zoning § 404.

The defendant in her efforts to show the lower court decree to be against the law and obtain complete relief therefrom has argued for the first time in this Court the defense of laches, estoppel or unconscionable failure to take timely action whereby defendant was lulled into spending a small fortune simply to be denied the fruits thereof at the plaintiffs' whims.

■ The defenses of laches, estoppel or "any other matter constituting an avoidance or affirmative defense" must be pleaded affirmatively, Rule 8(c) M.R.C.P., or they will be considered waived, Rule 12 (h) M.R.C.P. See also, Field and McKusick, Maine Civil Practice, Commentary, § 12.18. Furthermore, it is fundamental and a rule of general application in the concept of appellate practice that save for certain recognized exceptions, questions of error not raised and properly preserved in the trial court will not be considered on appeal. Existing issues between the parties should be properly raised by sufficient pleading at the trial level, and if a party desires the sitting Justice to take judicial cognizance of his contentions, he should give timely notice thereof during the trial and at the conclusion thereof once again call all such matters to the trial court's attention to the end that in fairness to the court and the opposing party opportunity may be had for proper determination of the action desired. Defendant's presently advanced matter in avoidance of plaintiffs' action should also have been particularized in her points on appeal. Failure so to state the same may be deemed waived under Rule 75(d) M.R.C.P. See under previous civil

procedure, Moody v. Clark, 27 Me. 551 (1847); Tibbetts v. Penley, 83 Me. 118, 21 A. 838 (1890); Ross v. Maine Central Railroad Company, 112 Me. 63, 90 A. 711 (1914); Libby v. Long, 127 Me. 293, 143 A. 66 (1928); Auburn Sewerage District v. Whitehouse, 128 Me. 160, 146 A. 80 (1929); Inhabitants of Town of Georgetown v. Reid, 132 Me. 414, 171 A. 907 (1934). Our Court has made an exception where jurisdiction was involved. Burkett et al. v. Blaisdell et al., 137 Me. 200, 17 A.2d 460 (1941). See also, 5 Am.Jur.2d Appeal and Error, §§ 545 et seq.; 4 C.J.S. Appeal & Error §§ 233 (i) and 242. We need not indicate if and under what exceptional circumstances we might consider questions of laches or estoppel when raised for the first time on appeal. We decline to do so in the instant case.

■ Initially, let us say as we did in Inhabitants of Town of Windham v. Sprague, Me., 219 A.2d 548, that where no attack is made as such upon the enabling act nor the zoning ordinance enacted thereunder, they are to be deemed presumptively constitutional. York Harbor Village Corporation v. Libby, 126 Me. 537, 542, 140 A. 382; Wright v. Michaud et al., 160 Me. 164, 177, 200 A.2d 543.

■■ We further note that in *Sprague,* supra, we stated as matter of policy in zoning that nonconforming uses should not be perpetuated any longer than necessary but be abolished as speedily as justice will permit; nevertheless the rights of the parties necessitate that the policy be carried out within the legislative standards and the municipal regulations thereunder.

■ Even though provisions permitting nonconforming uses are subject to the strict construction rule, *Sprague,* supra, we must never lose sight of this other guide line to legislative intent, to wit, unless inconsistent with the plain meaning of an enactment, words and phrases shall be construed according to the common meaning of the language. 1 M.R.S.A. § 72(3), for-

merly R.S.1954, c. 10, § 22(1). Statutes and ordinances should be read according to the natural and most obvious import of the language without resort to subtle and forced constructions for the purpose of either limiting or extending their operation, where there is no manifest legislative intent contrariwise. Pease v. Foulkes, 128 Me. 293, 298, 147 A. 212. Furthermore in construing legislative acts, all parts thereof must be taken into consideration to ascertain legislative intent. Cloutier v. Anctil, 155 Me. 300, 154 A.2d 175.

The enabling act expressly recognizes the owner's rights in continuing as of right nonconforming uses, since it withdraws existing structures and uses from the application of any zoning ordinance enacted thereunder, but it permits the same to apply "to new structures and uses, and changes in structures and uses" made after its enactment.

■ While it may impose lesser restrictions than the enabling statute allows and thus be more liberally disposed toward nonconforming uses, a municipality may not contain by zoning ordinance the statutory right afforded the owner to continue a nonconforming use by limitations more restrictive than the enabling legislation permits. It is beyond the power of a municipality to limit by zoning ordinance the right expressly or impliedly given the owner by the enabling statute to continue a nonconforming use except as permitted by the act itself. United Advertising Corp. v. Borough of Raritan (1952) 11 N.J. 144, 93 A.2d 362. The statute ordains that the zoning ordinance while not applying to structures and uses existing at the time of its enactment does apply to new structures and new uses, and to changes in structures and changes in uses made afterward. It further adds that the changes in structure and use to which a zoning ordinance applies may be defined in the ordinance. Thus, the Legislature in the same breath made zoning ordinances applicable to new structures and uses as well as to changes in existing

structures and uses made after their enactment. By so associating the general term "changes" in structures and uses with new structures and uses as they did, our Legislators must have had in mind only such substantial changes in use as amount to a new use or a use of a different character than the nonconforming use to which the ordinance was made inapplicable. Such identical intent was more readily apparent in the previous legislation which was in effect in 1941 at the time the reference zoning ordinance was originally enacted. R.S.1930, c. 5, § 142, then read:

"No ordinance or by-law adopted under the powers created by said sections one hundred thirty-seven to one hundred forty-four inclusive shall apply to structures existing at the time of the adoption of the ordinance nor to the then existing use of any building, but it shall apply to any alteration of a building to provide for its use for a purpose or in a manner substantially different from the use to which it was put before the alteration, and shall apply to a substantial change in the uses of a building when put to a new use without alteration."

"[W]hen the meaning of a statute is in doubt, it is well to resort to the original statute and there search for the legislative will as first expressed" Taylor v. Inhabitants of Town of Caribou, 102 Me. 401, at page 405, 67 A. 2, at page 4.

■■■■ The courts generally have construed similar zoning statutes or ordinances as requiring a substantial change or difference in character before condemning a use as an unlawful extension of a nonconforming use. A nonconforming use cannot be limited by a zoning ordinance to the precise magnitude thereof which existed at the date of the ordinance, and mere increase in the volume of business done pursuant to a nonconforming use by natural expansion and growth of trade cannot be considered an unlawful extension of that use. In re Mack's Appeal (1956) 384 Pa.

586, 122 A.2d 48; In re 501 Paxinosa Ave., Easton, (1951) 367 Pa. 340, 80 A.2d 789.

■■■■ An expansion or extension in the volume of business in pursuance of a nonconforming use does not constitute such a change of the use or such an expansion or extension thereof as is within the prohibition of the zoning ordinance or enabling act unless it amounts to a change in the character of the existing nonconforming use.

Thus, the Connecticut court, in Salerni v. Scheuy, (1954) 140 Conn. 566, 102 A.2d 528, in the application of the general rule, found a proscribed change in character in the conversion of a restaurant selling beer only to one with a full liquor permit. It reasoned its conclusion in this fashion:

"As a matter of common knowledge it is also true that ordinarily a restaurant with a full liquor permit is quite a different sort of enterprise from a restaurant which sells only beer. It is a more ambitious establishment, partaking to at least some degree of the characteristics of a night club, rather than a quiet family eating place. The difference between the two types of restaurant is so great that the trial court was correct in its conclusion that to carry into effect the plaintiffs' proposal to change their restaurant into one in which all kinds of liquor should be sold would be an extension and enlargement of their existing nonconforming use of the property and would create a use of the property prohibited by the zoning ordinance."

To the same effect, see De Felice v. Zoning Board of Appeals of Town of East Haven, 130 Conn. 156, 32 A.2d 635, 147 A.L.R. 161, where there was a difference in structures, methods, objects and results which produced a commercial enterprise in a new product of enhanced value. Also, Town of Marblehead v. Rosenthal, 316 Mass. 124, 55 N.E.2d 13, where the court considered as a prohibited substantial change the conversion of a small tailor and

furrier shop to a modern dry cleaning establishment. See also, Connecticut Sand & Stone Corp. v. Zoning Board of Appeals of the Town of Avon, (1963) 150 Conn. 439, 190 A.2d 594.

But where the original nature and purpose of the enterprise remain the same, and the nonconforming use is not changed in character, mere increase in the amount or intensity of the nonconforming use within the same area does not constitute an improper expansion or enlargement of such nonconforming use. Building Commissioner of Medford v. McGrath, (1942) 312 Mass. 461, 45 N.E.2d 265; Cochran v. Roemer, (1934) 287 Mass. 500, 192 N.E. 58; In re Associated Contractors, Inc., (1958) 391 Pa. 347, 138 A.2d 99; Firth v. Scherzberg, (1951) 366 Pa. 443, 77 A.2d 443; 101 C.J.S. Zoning § 193.

The sitting Justice relied on Beerwort v. Zoning Board of Appeals of the Town of Coventry, (1958) 144 Conn. 731, 137 A.2d 756. In that case, year-round use of land for trailer park purposes was held to be an unlawful extension of a seasonal nonconforming use at the expense of a conforming one, the court stating: "Any extension, either in time or in space, of the use beyond the one current at the time of the passage of the Coventry regulations is a proscribed extension of a nonconforming use and is certainly not consonant with the policy of the regulations themselves."

On the other hand, in Green v. Garrett, (1949) 192 Md. 52, 63 A.2d 326, the prolongation of the use of the Baltimore Stadium to professional baseball games for a considerable period of the year was held not to be an improper extension of the nonconforming use existing at the time of the adoption of the zoning ordinance, especially where the latter permitted a nonconforming use to be changed to a use of the same classification.

In determining whether an activity is within the scope of a permitted nonconforming use, consideration must be given to the particular facts of the case, the terms of the particular ordinance, and the effect which the increased use will have on other property. Usually local boards of appeal are entrusted with the function of deciding, within prescribed limits and consistent with the exercise of a legal discretion, whether a regulation applies to a given situation, and the manner of its application. In discharging such responsibility, ordinarily local boards of appeal are endowed with a liberal discretion and their action is subject to review by the courts only to determine whether it was unreasonable, arbitrary or illegal. In the instant case, the plaintiffs have not sought to submit their grievance before the local zoning authorities, and thus neither this Court nor the sitting Justice have had the benefit of a preliminary determination by responsible municipal zoning authorities who may be better situated to apply the restrictive regulations of their zoning ordinance.

The South Portland zoning ordinance, so far as nonconforming uses are concerned, does not provide an absolute ban on changes in such uses but expressly permits the change from one nonconforming use to another having clearly the same character; it proscribes a change to a dissimilar use. The reconstruction or restoration of any nonconforming building destroyed or damaged by fire or other accidental cause is permitted, if the extent of the damage is less than 75% of the assessed value of the building before the damage and if the reconstruction or restoration does not involve any increase in the land area or floor area previously devoted to the nonconforming use. In the instant case, the nonconforming use of the land for hotel purposes, if no consideration is given to the increased use for dining room service, is exactly the same whether the operation be in the winter time or during the summer. It is the identical nonconforming use carried on year-round. The ordinance does not specifically define as a prohibited extension or enlargement mere increase of the nonconforming use in time, whether in the

number of hours, days, weeks or calendar months during which the activity may be carried on. It is a fact that the area surrounding defendant's property has in recent years in the case of most of the neighborhood properties, changed from summer cottages to year-round residences. Most area owners have winterized as the defendant has done with the hotel. She merely has followed the trend. Furthermore there is no credible evidence that the year-round operation of the hotel without dining room service for large groups of transients in and of itself would have a greater adverse and depressant effect upon the value of residential property in the vicinity than already existed by reason of the nonconforming summer hotel operation. We hold that the mere prolongation of the operation of the hotel with incidental dining room service as hereinafter approved from a period of four months in the summer to a year-round activity is not within the prohibitory language of the South Portland zoning ordinance when under such ordinance a nonconforming use may be changed to one clearly having the same character. It is not such an extension or enlargement as the ordinance intended to prevent.

The sitting Justice however was completely right in permanently enjoining "catering on the premises to parties or groups of transients (not registered and assigned to hotel rooms) where the number of persons in such parties or groups on the premises at any one time exceeds twenty-five." His finding that by aggressive advertisement and other solicitation the defendant has greatly increased the transient business and now caters to many large parties and serves luncheons, banquets and the like, is fully supported by the evidence. Limiting the furnishing of dining room facilities to hotel guests and to transients provided that the number of transients exclusive of registered guests is limited to twenty-five at any one time as provided for by the lower court decree is not clearly erroneous. The operation of a public restaurant, whereby the defendant undertook to serve all comers and to cater to large parties in putting on luncheons, banquets and the like, was a substantial departure as a matter of fact and law from the nonconforming use in maintaining a hotel with incidental dining room facilities for hotel guests and casual non-registered transients. The restaurant business activity as carried on by the defendant was an unlawful enlargement or extension of a nonconforming use prohibited by the South Portland zoning ordinance.

In providing a curfew hour, to wit, 9:00 o'clock in the evening for the offering of the facilities of the hotel to transient guests, the sitting Justice gave relief on a broader scale than the evidence in the case can legally support. The maximum relief to which the plaintiffs are entitled is that the defendant be permanently enjoined from offering the dining room facilities of the hotel after the hour of 9:00 o'clock in the evening.

The entry will be:

Appeal sustained in part and denied in part, without costs; case remanded for the entry of a decree consistent with this opinion. So ordered.

WEBBER and RUDMAN, JJ., did not sit.